**TOM-A-HAWK TRANSIT, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 17450.

United States Court of Appeals
Seventh Circuit.

Dec. 19, 1969.

---

Joseph H. Barnett, Gary K. Mickey, Aurora, Ill., for petitioner; O'Brien, Burnell, Puckett & Barnett, Aurora, Ill., of counsel.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, William F. Wachter, Susan J. Sherman, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before SWYGERT and FAIRCHILD, Circuit Judges, and WILL,[1] District Judge.

SWYGERT, Circuit Judge.

This is a petition for review filed by Tom-A-Hawk Transit, Inc. challenging the Board's finding that the company violated sections 8(a)(5) and 8(a)(1) of the National Labor Relations Act. The question for decision is whether Tom-A-Hawk is a successor of Aurora City Lines and thereby obligated to bargain with Division 215 of the Amalgamated Transit Union.

For more than thirty years Aurora City Lines, acting under the authorization of the Illinois Commerce Commission, provided municipal bus service for the city of Aurora, Illinois. During that time Division 215 of the Amalgamated Transit Union was the bargaining representative of the employees of Aurora City Lines and had negotiated collective bargaining contracts with the company. The last contract expired December 31, 1967, but the employees continued to work beyond that date without a formal written contract.

For many years Aurora City Lines had not operated profitably and by late 1967 it became common knowledge in Aurora that the company would soon be forced to cease operations. With the apparent impending financial collapse of Aurora City Lines in mind, Tom-A-Hawk was incorporated in December 1967 to take over the municipal bus service in Aurora when Aurora City Lines discontinued operations. (The owners of Tom-A-Hawk had operated a charter bus service in Aurora since 1962.) After its incorporation, Tom-A-Hawk entered into a contract with the city of Aurora to operate a municipal bus service in and about the city. The contract provided that Tom-A-Hawk start operations on February 1, 1968 and temporarily maintain the routes previously used by Aurora City Lines. On January 31, 1968 Aurora City Lines discontinued its service and Tom-A-Hawk commenced its operations on the next day.

With knowledge of the planned substitution of Tom-A-Hawk for Aurora City Lines, the union, in mid-January 1968, demanded that the newly-formed company recognize it as the bargaining representative for its employees and commence bargaining over a new contract. Tom-A-Hawk refused. Thereafter the general counsel of the Board filed a complaint charging Tom-A-Hawk with unfair labor practices. Following a hearing and a decision by the trial examiner, the Board found the company guilty of violating sections 8(a)(5) and 8(a)(1) of the Act and issued an order requiring Tom-A-Hawk to bargain with the union.[2] The company thereafter petitioned this court to review the Board's decision and set aside its order.

We hold that the Board properly determined Tom-A-Hawk was a successor of Aurora City Lines and therefore was obligated to recognize and bargain with the union.

It is a settled principle that when employees have bargained collectively with an employer and there occurs a change of ownership not affecting the

1. Judge Hubert L. Will is sitting by designation from the United States District Court for the Northern District of Illinois.

2. The Board's decision is reported at 174 N.L.R.B. 24.

essential nature of the enterprise, the successor employer must recognize the incumbent union and deal with it as the bargaining representative. *E. g.,* NLRB v. Armato, 199 F.2d 800 (7th Cir. 1952); Overnite Transportation Co. v. NLRB, 372 F.2d 765 (4th Cir. 1967); NLRB v. McFarland, 306 F.2d 219 (10th Cir. 1962). Since the purpose of the Act is to avoid industrial strife, the focus in representation questions is on the employing industry encompassed by the enterprise rather than on the employer. As the Sixth Circuit stated in NLRB v. Colten, 105 F.2d 179, 183 (1939):

> It is the employing industry that is sought to be regulated and brought within the corrective and remedial provisions of the Act in the interest of industrial peace. * * * It needs no demonstration that the strife which is sought to be averted is no less an object of legislative solicitude when contract, death, or operation of law brings about change of ownership in the employing agency.

In situations such as the instant case, we must inquire whether the employing industry has retained its identity and continuity to a degree sufficient to make it reasonable that the successor employer be required to recognize the incumbent union. International Chemical Workers Union v. NLRB, 129 U.S.App.D.C. 416, 395 F.2d 639 (1968).

When it became apparent that Aurora City Lines would discontinue its operations, the city negotiated with Tom-A-Hawk for the express purpose of continuing the public transportation service which Aurora City Lines had been furnishing. An exclusive franchise was granted Tom-A-Hawk to replace a similar franchise which Aurora City Lines relinquished. At the time it ceased operation, Aurora City Lines had twenty-three or twenty-four drivers and maintenance employees on its payroll. Tom-A-Hawk began operations with twenty-four drivers and maintenance employees, fourteen of whom had worked for Aurora. We think these are important indicia of the continuity and retained identity of the employing industry.

Tom-A-Hawk points to several factors in contending that there have been material and substantial changes in the employing industry. It purchased no buses from Aurora City Lines, instead leasing new buses from the city. It established new garage and terminal facilities. Within three months after starting operations Tom-A-Hawk changed bus routes, instituted new time schedules, and decreased fares. The hourly wage of the drivers has been increased and employee benefits have been modified. But these changes are of little significance when compared with the fact that the basic operations and services performed by the two companies were identical. As the trial examiner observed: "Had the old company bought replacement buses, changed the fare, moved a few lines to run along one street instead of another, I doubt it could be said the employment aspect of the business underwent an essential change."

Tom-A-Hawk maintains that successorship requires some form of privity between the employers and that none existed here since there was no transfer of assets or other direct dealing between Aurora City Lines and Tom-A-Hawk. Some cases do speak of a transfer of assets, *e. g.,* Overnite Transportation Co. v. NLRB, 372 F.2d 765 (4th Cir. 1967). However, no direct contractual relationship is required, for example, "when contract, death, or operation of law brings about change of ownership in the employing agency," NLRB v. Colten, 105 F.2d 179, 183 (6th Cir. 1939). Similarly there need be no transfer of assets. As the Board said in Maintenance, Inc., 148 N.L.R.B. 1299, 1301 (1964):

> The duty of an employer who has taken over an "employing industry" to honor the employees' choice of bargaining agent is not one that derives from a private contract, nor is it one that necessarily turns upon the acquisition of

assets or assumption of other obligations usually incident to a sale, lease, or other arrangement between employers. It is a public obligation arising by operation of the Act.

Therefore, we do not think that the absence of dealing between Aurora City Lines and Tom-A-Hawk bars a finding of successorship in this case. The evidence clearly establishes the requisite finding of continuity in the employing industry.

Our decision is strongly supported by the policy underlying the Act. Tom-A-Hawk has not based its refusal to bargain upon a good faith doubt that the union represents the majority of employees in the bargaining unit. Without such a good faith doubt, the refusal of Tom-A-Hawk to recognize the union merely encourages industrial strife. In addition, to decide otherwise would be to ignore an important part of the rationale underlying the landmark successorship case of John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). There the Supreme Court said:

> The objectives of national labor policy, reflected in established principles of federal law, require that the rightful prerogative of owners independently to rearrange their businesses and even eliminate themselves as employers be balanced by some protection to the employees from a sudden change in the employment relationship. 376 U.S. 543, 549, 84 S.Ct. 909, 914.

We believe that the employees' interest in continuing union representation strongly outweighs any legitimate interest of Tom-A-Hawk in refusing to recognize the union and bargain for a new contract.

The order of the Board will be enforced.