The **WILLIAM J. BURNS INTERNATIONAL DETECTIVE AGENCY, INC.,** Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent,

**International Union, United Plant Guard Workers of America and Its Amalgamated Local Union No. 162,** Intervenor.

Nos. 401, 402, Dockets 34889, 35055.

United States Court of Appeals, Second Circuit.

Argued March 8, 1971.

Decided April 26, 1971.

Seymour Swerdlow, Los Angeles, Cal. (Charles G. Bakaly, Jr., Richard C. White, Kathleen Peratis, O'Melveny & Myers, Los Angeles, Cal., on the brief), for petitioner.

Nancy Sherman (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Julius Rosenbaum, Atty., National Labor Relations Board, on the brief), for respondent.

Gordon A. Gregory, Detroit, Mich. (Gary A. Marsack, Livingston, Gregory, Van Lopik & Higle, Detroit, Mich., on the brief), for intervenor.

Before HAYS and FEINBERG, Circuit Judges, and CURTIN, District Judge.*

HAYS, Circuit Judge:

From 1962 until 1967 the Wackenhut Corporation provided plant protection services for the facility of the Lockheed Aircraft Service Company located at Ontario International Airport, Ontario, California. In 1967 Lockheed arranged with the William J. Burns International Detective Agency, petitioner on this appeal, to take over the plant protection duties from Wackenhut and on May 31, 1967 Lockheed notified Wackenhut that Burns would take over on July 1.

On March 8, 1967 the International Union, United Plant Guard Workers of America and its Amalgamated Local Union No. 162 were certified as representatives of Wackenhut's employees working at Lockheed and on April 29, 1967 Wackenhut and the union entered into a collective bargaining agreement to be in effect from April 29, 1967 until April 28, 1970.

On July 1, 1967 Burns took over the plant protection work at Lockheed. Burns employed for this purpose 42 guards, 27 of whom had previously been employed by Wackenhut.

The United Plant Guard Workers demanded that Burns recognize the union as the exclusive representative of Burns' employees at Lockheed and honor the collective agreement which the union had negotiated with Wackenhut. Burns refused both requests and the union thereupon filed unfair labor practice charges with the Board.

The Board, affirming a Trial Examiner's decision, held that Burns had violated Section 8(a) (2) and (1) of the National Labor Relations Act (29 U.S.C. § 158(a) (2) and (1) (1964)) by unlawfully recognizing and assisting the American Federation of Guards, a "rival" union; that it had violated Section 8(a) (5) and (1) (29 U.S.C. § 158(a)

---

* Of the United States District Court for the Western District of New York, sitting by designation.

(5) and (1) (1964)) by failing to recognize and bargain with the United Plant Guard Workers of America; and that Burns was obligated to honor the collective bargaining agreement which had been entered into between the latter union and the Wackenhut Corporation. Burns petitions for review of the Board's order except for that portion charging it with unlawful assistance and recognition of the American Federation of Guards; the Board cross petitions to enforce the entire order. We enforce the Board's order except for that part which requires the company to honor the collective. agreement between Wackenhut and its union.

## I.

■■■ The Board found that Burns violated Section 8(a) (2) and (1) of the Act by unlawfully assisting and recognizing the American Federation of Guards. Although Burns has not petitioned for review of this portion of the order, it apparently seeks to avoid the consequences of the Board's action by stating that it "has elected to comply with that portion of the Board's order requiring it to cease and desist from recognizing the American Federation of Guards as representative of its guards at the Facility." The fact, however, that the employer is willing to comply does not render the cause moot; the Board may still seek and secure enforcement from the courts. NLRB v. Mexia Textile Mills, Inc., 339 U.S. 563, 567, 70 S.Ct. 833, 94 L.Ed. 1067 (1950). The Board's finding of unlawful assistance and recognition is amply supported by the record. We enforce that part of its order.

## II.

The remainder of the Board's order deals with its finding that Burns unlawfully refused to recognize and bargain with the United Plant Guard Workers of America and to honor the collective bargaining agreement which that union negotiated with Burns' predecessor, Wackenhut.

Burns first contends that a bargaining unit limited only to Burns guards working at Lockheed is not appropriate and that therefore, the Board's order is not enforceable. Burns argues that the high degree of integration of its Ontario Sub-Office, which managed 30 contracts in addition to the contract at Lockheed, required a bargaining unit encompassing the entire area, particularly in view of the centralized control of labor relations that Burns claims existed there. The Board on the other hand, argues, in support of its finding, that Burns' employees serviced the same facility that was considered an appropriate unit for Wackenhut's employees, that Burns' employees had a community of interest, were supervised by one man on a full-time daily basis who had hiring and firing authority, and were paid a distinctly higher wage than other Burns employees in the Los Angeles branch area (which included Ontario).

■■ The Board has a large measure of discretion in making unit determinations. See Packard Motor Car Co. v. NLRB, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040 (1947); Continental Insurance Co. v. NLRB, 409 F.2d 727, 728 (2d Cir.), cert. denied, 396 U.S. 902, 90 S.Ct. 215, 24 L.Ed.2d 178 (1969). The centralization of final decisions on labor policy is not per se decisive of the extent of an appropriate unit where the Board has substantial justification for establishing a smaller unit. Continental Insurance Co. v. NLRB, *supra* at 729. We cannot say that the Board lacked such justification in this case.

■■ We agree as well with the Board's finding that Burns is a successor employer to Wackenhut and as such is required to recognize the union chosen by Wackenhut's employees. See, e. g., Tom-A-Hawk Transit, Inc. v. NLRB, 419 F.2d 1025, 1026–1027 (7th Cir. 1969). The determination that an employer is a successor is made on the basis of "continuity in the business operation," NLRB v. Zayre Corp., 424 F.2d 1159, 1162 (5th Cir. 1970), that is, whether the opera-

tion is "essentially the same as that previously conducted. * * *" S. S. Kresge Co. v. NLRB, 416 F.2d 1225, 1234 (6th Cir. 1969). Has the "employing industry * * * retained its identity and continuity to a degree sufficient to make it reasonable that the successor employer be required to recognize the incumbent union[?]" (Tom-A-Hawk Transit, Inc. v. NLRB, *supra* 419 F.2d at 1027.) We think that it has in the instant case.

All of the important factors which the Board has used and the courts have approved are present in the instant case: "continuation of the same types of product lines, departmental organization, employee identity and job functions." NLRB v. Zayre Corp., *supra* 424 F.2d at 1163 (footnotes omitted). Both Burns and Wackenhut are nationwide organizations; both performed the identical services at the same facility; although Burns used its own supervisors, their functions and responsibilities were similar to those performed by their predecessors; and finally, and perhaps most significantly, Burns commenced performance of the contract with 27 former Wackenhut employees out of its total complement of 42.[1]

### III.

From the fact that Burns was the successor of Wackenhut within the meaning of that term as applied by the Board and the courts, and was required to recognize the union chosen by Wackenhut's employees, it does not follow that Burns could be ordered by the Board to honor the collective agreement to which Wackenhut and its union were parties. In none of the previous successorship cases has the Board ever reached that result. The successor has always been held merely to have the duty of bargaining with his predecessor's union. We conclude that in ordering Burns to honor the contract executed by Wackenhut, the Board has exceeded its powers. Neither the applicable case law nor the national labor policy justifies the Board in imposing a collective agreement upon an unwilling party who had no part in the negotiation of the agreement.

The action of the Board in this case is contrary to the letter as well as the spirit of the Supreme Court's recent decision in H. K. Porter Co., Inc. v. National Labor Relations Board, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970). That case held that the Board and the courts "[are] without power to compel a company or a union to agree to any substantive contractual provision of a collective bargaining agreement." *Id.* at 102, 90 S.Ct. at 823. As the Court points out, the legislative history of the National Labor Relations Act and of the enactment of § 8(d) of the Act,[2] strongly supports the conclusion that "the Board acts to oversee and referee the process of collective bargaining, leaving the results of the contest to the bargaining

---

1. Although the absence of wholesale hiring of predecessor's employees does not require a finding that there has been no successorship, see Monroe Sander Corporation v. Livingston, 377 F.2d 6, 12 (2d Cir.), cert. denied, 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 (1967), its presence is relevant "to show similarity of operations." *Id.* The Court in John Wiley & Sons v. Livingston, 376 U.S. 543, 551, 84 S.Ct. 909, 915, 11 L.Ed.2d 898 (1964) placed great stress on this single factor by holding that "relevant similarity and continuity of operation across the change in ownership is adequately evidenced by the wholesale transfer of Interscience employees to the Wiley plant, apparently without difficulty."

2. Section 8(d) reads as follows:
"For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, *but such obligation does not compel either party to agree to a proposal or require the making of a concession.* * * *"
29 U.S.C. § 158(d) (1964) (emphasis added).

strengths of the parties." *Id.* at 108, 90 S.Ct. at 826.

"While the parties' freedom of contract is not absolute under the Act, allowing the Board to compel agreement when the parties themselves are unable to agree would violate the fundamental premise on which the Act is based—private bargaining under governmental supervision of the procedure alone, without any official compulsion over the actual terms of the contract." *Id.* at 108, 90 S.Ct. at 826.

The Board professes to find authority for its order to Burns to honor the Wackenhut contract in John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S. Ct. 909, 11 L.Ed.2d 898 (1964).

The Board does not claim that *Wiley* stands directly for the proposition that all of a predecessor's contractual obligations can be imposed on an unwilling successor. The holding of *Wiley* is merely that "in appropriate circumstances, present here, the successor employer may be required to arbitrate with the union under the agreement." *Id.* at 548, 84 S.Ct. at 914. Indeed, the *Wiley* case arose in the context of an action to compel arbitration under § 301 of the Labor Management Relations Act. (29 U.S.C. § 185 (1964)).

The Board contends, however, that the policy considerations upon which *Wiley* is based support its action in this case. But the policy behind the decision in *Wiley* was founded upon the Court's recognition of "the central role of arbitration in effectuating national labor policy." *Id.* at 549, 84 S.Ct. at 914.[3] The Court's determination is only that "the impressive policy considerations favoring arbitration are not wholly overborne by the fact that Wiley did not sign the contract being construed." *Id.* at 550, 84 S.Ct. at 915 (footnote omitted).

Although it is true that a rule such as that promulgated by the Board would put future potential successor employers on notice that existing contracts would be obligatory on them and thus provide them with a choice of action, the rule would bind the union to a contract with a successor employer without giving it any opportunity for choice. This could sometimes result in serious inequities. For example, where a union made substantial concessions to a failing employer in order to keep him in business and then discovered that the successor was a strong, financially viable organization, it would have no chance to bargain anew. The Board's holding that it will consider "unusual circumstances" (see, e. g., Emerald Maintenance, Inc., 188 N.L.R.B. No. 139 (1971)) where the Board, citing "unusual circumstances," refused to apply the rule it had earlier laid down in *Burns*) is no answer since it merely arrogates to the Board the additional power to pick and choose among the contractual provisions it will impose on non-contracting parties.

We refuse enforcement to that portion of the Board's order that requires Burns to honor the terms of the collective agreement between the union and Wackenhut.

---

3. The Court repeatedly emphasized this basis for its decision and the limited effect of its holding:

"Here, the question is whether Wiley, which did not itself sign the collective bargaining agreement on which the Union's claim to arbitration depends, is bound at all *by the agreement's arbitration provision.*

\* \* \* \* \*

\* \* \* It would derogate from *'the federal policy of settling labor disputes by arbitration,'* \* \* \* if a change in the corporate structure and ownership of a business enterprise had the automatic consequence of *removing a duty to arbitrate* previously established." John Wiley & Sons v. Livingston, 376 U.S. 543, 547, 549, 84 S.Ct. 909, 914 (1964) (citation omitted) (emphasis added).