**PRINTING SPECIALTIES & PAPER PRODUCTS UNION NO. 447, INTERNATIONAL PRINTING PRESSMEN AND ASSISTANTS UNION OF N. A., AFL–CIO, Plaintiff-Appellant,**

v.

**PRIDE PAPERS AARONSON BROS. PAPER CORPORATION et al., Defendants-Appellees.**

**Nos. 743, 744, Dockets 35504, 35505.**

United States Court of Appeals, Second Circuit.

Argued April 26, 1971.

Decided June 15, 1971.

David Scribner, New York City (Frank Scheiner, Joel C. Glanstein, Scribner, Glanstein & Klein, New York City, on the brief), for plaintiff-appellant.

Noel Arnold Levin, New York City (Jerome M. Schwartz, Levin, Rosmarin & Schwartz, New York City, on the brief), for defendants-appellees.

Before HAYS and FEINBERG, Circuit Judges, and BLUMENFELD, District Judge.*

HAYS, Circuit Judge:

This action was instituted in the United States District Court for the Southern District of New York to obtain declaratory, injunctive and monetary relief under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185 (1964)) for alleged breaches by the defendants of a collective bargaining agreement between appellant union and defendants Roitman Paper Co., Inc., and its wholly owned subsidiary, Terminal Paper Converting, Inc. After trial without a jury, Judge Tyler dismissed the complaint and later denied plaintiff's motion for a new trial. We affirm.

Roitman Paper Co., Inc. and Terminal Paper Converting, Inc. were members of The Paper Merchants Association of New York which executed a multi-employer collective bargaining agreement with plaintiff Printing Specialties & Paper Products Union No. 447, International Printing Pressmen and Assistants Union of N. A., AFL-CIO in 1961. This agreement was subsequently modified and extended to August 31, 1967.

On December 23, 1964, Roitman-Terminal entered into a consolidation agreement with defendant Aaronson Bros. Paper Corporation which was engaged in a similar line of work. The new firm was to operate at the Brooklyn plant of Aaronson under the name Pride Paper-Aaronson Bros. Paper Corporation, and Max Roitman, the sole owner of Roitman-Terminal, became the executive vice-president and secretary of the new corporation, with a 50% stock interest.

At the time of the consolidation, Aaronson Bros. had 26 employees who remained with the new company. These employees were represented by Local 210, International Brotherhood of Teamsters, which

---

* Of the United States District Court for the District of Connecticut, sitting by designation.

had a collective bargaining agreement with Aaronson Bros. covering their work.

Negotiations with regard to the new firm's hiring the seven employees of the old Roitman firm failed and these employees were sent the following notice on December 24, 1964:

"This is to inform you that this company will cease its production operations effective December 24, 1964. Your services will no longer be needed after January 8, 1965.

This is to be deemed notice in accordance with collective bargaining agreement between this company and your union."

The consolidation was effectuated, and Roitman-Terminal closed down its Manhattan plant. All obligations owing to the former Roitman employees and to the plaintiff union for the various funds provided in the collective agreement were paid.

Plaintiff union filed suit for an alleged breach of the Local 447 Industry Association collective bargaining agreement. The complaint sought a declaratory judgment that the contract was still in effect at the new consolidated plant, damages on behalf of Local 447 and the affected employees, and injunctive relief to insure the continued enforcement of the agreement at the Pride-Paper Aaronson Bros. plant.

Plaintiff refers us to a provision in the consolidation agreement which states that "all obligations, present and future under a contract or contracts, between Roitman Terminal and the labor union representing the employees of Roitman and Terminal" were to be assumed by the consolidated operation. This provision cannot properly be interpreted to mean that the old Roitman-Terminal employees could not be terminated, or that if they were terminated, the new operation was required to continue paying their wages. It is extremely significant that the consolidation agreement contained no provision with respect to the employees of what was formerly Aaronson Bros. Pa-

per Corp. The provision of the consolidation agreement clearly refers to those contractual obligations of Roitman-Terminal, such as payment to the various union funds, which would be due upon termination of the collective agreement. These obligations were met by Pride Papers.

The plaintiff union does not expressly claim that the seven former Roitman employees had to be re-employed by the consolidated company. Such a contention, based on the supposition that contractual obligations somehow survived termination of the contract, would be unavailing in the light of our opinion in Local 1251 Int. U. of U. A., A. & A. I. W. v. Robertshaw Controls Co., 405 F.2d 29 (2d Cir. 1968), overruling Zdanok v. Glidden Co., 288 F.2d 99 (2d Cir.), cert. denied on this issue, 368 U.S. 814, 82 S.Ct. 56, 7 L.Ed.2d 22 (1961).

Plaintiff union's principal contention is that the 26 Aaronson employees who were retained by the new company must now be paid the wages and receive the benefits provided by the Local 447 Industry Association agreement. None of these employees were ever represented by Local 447. On the contrary they were represented under a valid existing collective agreement by another union. Plaintiff argues, however, that the new company is a "successor employer" to Roitman-Terminal and that as such a "successor employer" the new company was required to assume the employer's obligations under the old collective agreement. We reject this argument.

"[C]ontinuity in the business operation" is the essential test for successorship. N. L. R. B. v. Zayre Corp., 424 F.2d 1159, 1162 (5th Cir. 1970). In effect, all that really occurred in the instant case is that Roitman closed down his small business and discharged his employees. He then acquired an interest in a new business at a different location, with different employees. The fact that no Roitman-Terminal employees worked at the new enterprise is most compelling

evidence of a lack of substantial continuity in the business enterprise.[1]

Moreover, plaintiff's position would not be sustainable even if in some sense Pride Papers could be said to be a "successor" to Roitman-Terminal. The only obligations that have been imposed by the courts on successor employers are the obligations to arbitrate (see, e. g., John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Monroe Sander Corp. v. Livingston, *supra*) and to recognize and bargain with the union (see, e. g., N.L.R.B. v. Zayre Corp., *supra*; Tom-A-Hawk Transit, Inc. v. N.L.R.B., 419 F.2d 1025 (7th Cir. 1969)). The existence at the new plant of another union which represents all of the employees under an existing collective agreement, is sufficient to defeat any conclusion that Pride Papers can be held to be a "successor employer" to Roitman-Terminal for purposes of arbitration. McGuire v. Humble Oil and Refining Company, 355 F.2d 352 (2d Cir.), cert. denied, 384 U.S. 988, 86 S.Ct. 1889, 16 L.Ed.2d 1004 (1966). As a matter of fact, in the instant case neither party seeks arbitration. Moreover, the union apparently does not seek recognition as the representative of Pride Papers' employees.

The union is in effect asking this court to impose the terms of the collective bargaining agreement negotiated with the now defunct Roitman-Terminal operation on the new consolidated company. In our recent decision in The William J. Burns International Detective Agency v. N.L.R.B., 441 F.2d 911 (2nd Cir., 1971), we held that the National Labor Relations Board could not impose "a collective agreement upon an unwilling party who had no part in the negotiation of the agreement." (*Id.* at 915.) There is no reason either in policy or precedent which would justify a court's imposing a contract in a situation such as that presented by the present case.

The judgment of the district court is affirmed.

---

1. In Monroe Sander Corp. v. Livingston, 377 F.2d 6, 12 (2d Cir.), cert. denied, 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89 (1967), we found a successorship although none of the former employees were hired by the successor corporation. In that case, however, continuity was evidenced by many factors, not the least of which was the fact that the transaction involved "a parent corporation's termination of one subsidiary plant and the purchase of another." *Id.*