NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BOSTON NEEDHAM INDUSTRIAL
CLEANING CO., INC., Respondent.

No. 75–1074.

United States Court of Appeals,
First Circuit.

Argued Sept. 5, 1975.

Decided Nov. 13, 1975.

---

Roger T. Brice, Washington, D.C., with whom Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, and John D. Burgoyne, were on brief, for petitioner.

George F. McInerny, Boston, Mass., with whom Lynch, Welch, Whitney & McInerny, Boston, Mass., was on brief, for respondent.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and THOMSEN,* Senior District Judge.

McENTEE, Circuit Judge.

This case deals with the question of employer successorship. It has been said that "[the] subject of successorship is shrouded in somewhat impressionist approaches . . .." *International Ass'n of Machinists, Dist. Lodge 94 v. NLRB,* 134 U.S.App.D.C. 239, 414 F.2d 1135, 1139 (Leventhal, J., concurring), *cert. denied,* 396 U.S. 889, 90 S.Ct. 174, 24 L.Ed.2d 163 (1969). In general, the law of successorship has evolved gradually, in case-by-case fashion, and the courts have been reluctant to enunciate very broad principles in this area, preferring a more ad hoc approach.[1] So here we must apply this "shrouded" body of law to the specific factual context in which the Boston Needham Industrial Cleaning Co. ("Boston Needham") took over the duties of Sanitas Services of Massachusetts ("Sanitas") at the RCA facility in Burlington, Massachusetts.

The National Labor Relations Board is applying to this court for enforcement of its order of January 3, 1975, against Boston Needham. The Board found that Boston Needham was a "successor" to Sanitas, which, at the time of succession, had a collective bargaining agreement with the Building Service Employees International Union, Local 254, AFL–CIO ("Union"). As a result of this finding of successorship, the Board held that Boston Needham had violated § 8(a)(5) and (1) of the National Labor Relations Act when it refused to bargain with the union as the representative of a bargaining unit comprised of all the cleaning maintenance employees employed by Boston Needham at the RCA facility in Burlington. Accordingly, the Board entered an order which, in pertinent part, required that Boston Needham cease and desist from refusing to recognize and bargain

---

* Of the District of Maryland, sitting by designation.

1. As one commentator has observed:

   "[T]he issue of employer successorship arises out of a seemingly endless variety of factual settings with each new case presenting some of the factors considered relevant to the resolution of prior cases while raising other materially altered, entirely omitted, or newly-added facts which arguably should affect the decision on the merits." Slicker, *A Reconsideration of the Doctrine of Employer Successorship—A Step Toward a Rational Approach,* 57 Minn.L.Rev. 1051, 1103 (1973).

collectively with the Union as the exclusive bargaining representative of all employees in the unit.[2]

The facts upon which this finding and order are predicated are not overly complex and are not seriously disputed by the parties. Sanitas performed, under contract, the maintenance services at the RCA facility in Burlington through the end of 1973. It was a signatory to a collective bargaining agreement between Maintenance Contractors of New England, Inc. (an association of employers) and the Union; by the terms of this agreement, the Union was recognized as the collective bargaining representative for all of the association's janitorial employees wherever employed in Massachusetts. In December 1973, Boston Needham, which was not a member of the association and was not a party to any collective bargaining agreement, obtained a contract for cleaning the RCA facility commencing January 2, 1974. As of January 4, 1974, there were on Boston Needham's payroll 32 employees servicing the RCA facility; of these, 21 were previously employed by Sanitas at the same location. It was on this latter date that the Union demanded that Boston Needham recognize and bargain with it for the janitorial employees at RCA; Boston Needham's rejection of this demand precipitated this action.

In examining the Board's conclusions concerning the factual circumstances of this case, we are aware that the scope of our review is limited; we do not ask whether our decision would have been the same as the Board's, but solely whether the Board's decision was supported by substantial evidence on the record as a whole and was not in error on the law. "Misapplication of law, failure of substantial evidence, abuse of discretion—these are the elements upon which a court may rely in reviewing the Board's decision. . . . Absent these, the administrative determination must be supported." *General Instrument Corp. v. NLRB,* 319 F.2d 420, 422 (4th Cir. 1963), cert. denied, 375 U.S. 966, 84 S.Ct. 484, 11 L.Ed.2d 415 (1964). *See also Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Banco Credito y Ahorro Ponceno v. NLRB,* 390 F.2d 110, 112 (1st Cir.), cert. denied, 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968).

■ At the threshold, we affirm the Board's finding as to the appropriateness of the bargaining unit. This determination "involves of necessity a large measure of informed discretion and the decision of the Board . . . is rarely to be disturbed." *Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). *See also S. D. Warren Co. v. NLRB,* 353 F.2d 494, 497–98 (1st Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 300 (1966). In this instance, the Board found a sufficient separate community of interest to make this single-plant unit [3] an appropriate one. In support of this finding, the Board stressed the factors that all of the regular employees of Boston Needham who work at the RCA facility work there exclusively and that they are under separate supervision from the employees at Boston Needham's other jobsites. Having studied the whole record, we see no reason to disturb the Board's finding that this single-plant unit, which was comprised of all the Boston Needham regular cleaning and maintenance employees [4] at RCA, had a sufficient sep-

---

**2.** *Boston-Needham Industrial Cleaning Co.,* 216 N.L.R.B. No. 12, 88 LRRM 1249 (1975).

**3.** The Board has a general rule whereby a single-plant unit is presumptively considered appropriate. *See, e. g., National Cash Register Co.,* 166 N.L.R.B. No. 27 (1967); *Welsh Co.,* 146 N.L.R.B. No. 77 (1964).

**4.** Sanitas had operated with a larger regular work force all of whom worked exclusively at the Burlington plant. Boston Needham has, in addition to their regulars, a supplementary work force consisting of "waxers" or "spares", who do the waxing at various locations including RCA Burlington, and who fill in for absent workers when necessary. These employees operate out of the company's central office and receive higher wages than the regular Boston Needham employees at RCA. The Board excluded them from the unit on the ground

arate community of interest to be an appropriate unit under the Act. *See Food Store Employees Local 347 v. NLRB*, 137 U.S.App.D.C. 248, 422 F.2d 685, 689 (1969).

■ Having upheld the Board's determination of the appropriate unit, we turn to the issue of whether there was successorship in this case, that is, "a change of ownership not affecting the essential nature of the enterprise." *Tom-A-Hawk Transit, Inc. v. NLRB*, 419 F.2d 1025, 1026–27 (7th Cir. 1969). In making this determination, the Board looks to the totality of the circumstances to determine whether there has been a substantial and material alteration in the employing enterprise. *See Lincoln Private Police, Inc.*, 189 N.L.R.B. No. 103 (1971). In this instance the Board found no such substantial and material alteration, and we believe that this finding was supported by substantial evidence. The Board acknowledged that Boston Needham had introduced slight changes which did have the effect of diminishing the unit's size and the scope of its duties, but the Board also found that these slight changes would not significantly affect employee attitudes. *See Zim's Foodliner, Inc. v. NLRB*, 495 F.2d 1131 (7th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974).

In making this determination, the Board was confronted by two of its prior decisions, which seemed to suggest a different result. *See Lincoln Private Police, Inc., supra*, and *Nova Services Co.*, 213 N.L.R.B. No. 14 (1974). The Board distinguished *Lincoln* with the observation that there the original employing industry had been fragmented. No evidence of such fragmentation appears in this case. In *Nova* (where, just as here, Sanitas was the predecessor employer); the alleged successor succeeded to only a fraction of the work which the predecessor had been performing at the jobsite in question. Here, the great majority of maintenance tasks are still being done by unit employees.

In *Lincoln* and *Nova* the Board found that the advent of the new employer involved changes significant enough to preclude a finding of successorship. Here, the Board found that the changes which had occurred did not reach the same level, and it articulated the circumstances which in its view distinguished those situations. While to us these may appear to be distinctions without much of a difference, we realize that this is a field where intricate line drawing must be done, and we cannot say that the Board's assessment in this case is irrational.

*The petition of the Board for enforcement of its order is granted.*

---

that they did not share a sufficient community of interest with the regular employees. We

find that this determination was neither arbitrary nor irrational.