NATIONAL LABOR RELATIONS BOARD *v.* MEXIA
TEXTILE MILLS, INC. :

No. 434. Argued April 18, 1950.—Decided May 15, 1950.

*A. Norman Somers* argued the cause for petitioner. *Solicitor General Perlman, Robert N. Denham, David P. Findling* and *Mozart G. Ratner* filed a brief for petitioner.

*John M. Scott* argued the cause and filed a brief for respondent.

MR. JUSTICE CLARK delivered the opinion of the Court.

This is a proceeding brought by the National Labor Relations Board charging unfair labor practices of the respondent, Mexia Textile Mills, a manufacturer of cotton goods at Mexia, Texas, engaged in interstate commerce within the meaning of the National Labor Relations Act [1] and the Labor Management Relations Act, 1947. [2] On the Board's petition for enforcement of its cease and desist order, the Court of Appeals for the Fifth Circuit referred the case back to the Board with directions to take evidence and report whether the order had been complied with by the respondent; if so, whether the matter should not be dismissed as moot; and, if not, what recommendations the Board had to make. We granted certiorari upon the claim that the effect of the order of the Court of Appeals was at variance with previous decisions of this Court. 338 U. S. 909 (1950).

The pertinent facts are these. In November 1944, the Board conducted an election at the respondent's plant, in which the Textile Workers Union of America, C. I. O., received an overwhelming majority. [3] The Board thereupon certified that Union as the exclusive representative

---

[1] 49 Stat. 449, 29 U. S. C. § 151 *et seq.*

[2] 61 Stat. 136, 29 U. S. C. (Supp. III) § 141 *et seq.*

[3] 146 of the 164 valid votes were cast in favor of the union, of the approximately 186 eligible voters.

of those production and maintenance employees who constituted the appropriate bargaining unit designated by the Board. In January 1947 the Union filed a charge with the Board complaining that respondent had refused to bargain collectively in good faith with the Union and was thus guilty of unfair labor practices within the meaning of §§ 8 (1) and 8 (5) of the National Labor Relations Act. The Board issued its complaint pursuant to those charges in June 1947. Respondent, in answer, admitted that it was engaged in interstate commerce within the meaning of the Act, denied the charges contained in the complaint, and alleged, *inter alia,* that the Union no longer represented a majority of employees in the bargaining unit, though the number of employees who had withdrawn was unknown to respondent. A hearing was held before a trial examiner in August 1947. The Trial Examiner denied respondent's motions for a more definite statement of the complaint, and for an order permitting the inspection and copying of certain evidence. Respondent's counsel thereupon withdrew from the hearing and took no further part therein.

In December 1947 the Trial Examiner issued his report. He concluded that "From the evidence, it is apparent that, although the respondent conferred with the Union on possible contract provisions, it did not bargain in good faith and had no intention of doing so." The failure to bargain was manifest from evidence of incidents taking place from the time of the certification of the Union until a month before its complaint was filed. Unilateral wage increases and respondent's efforts to shunt the Union representatives from one company official to another in search of the final authority in wage and contract negotiations—these and other findings led the Examiner to conclude that "an unmistakeable effort to escape genuine collective bargaining" was demonstrated. Further, the Examiner determined, there was no merit in the respond-

ent's contention that the Union did not retain the membership of a majority of employees in the bargaining unit. Respondent, having taken no part in the hearing, did not of course introduce any evidence to support its allegation.

The Examiner recommended, in substance, that respondent be ordered to cease and desist from its refusal to bargain in good faith with the Union. No exceptions to the report were filed within the time permitted by § 10 (c) of the Labor Management Relations Act, and in July 1948 the Board adopted the Trial Examiner's findings and issued the recommended order, as required by § 10 (c).

In April 1949 the Board petitioned the Court of Appeals for the Fifth Circuit for enforcement of its order. Respondent filed a motion for the taking of additional evidence, alleging that since the report of the Trial Examiner, "during the year 1948," it had "entered into good faith bargaining with the Union," but that an agreement had been prevented by the Union's "arbitrary, capricious and intransigent attitude . . . ." A copy of a letter respondent had sent to the Board's Regional Director, shortly after the Trial Examiner's report, was attached to respondent's motion. The letter stated that while respondent "did not see fit to argue" about past "disagreements and strikes" before the Trial Examiner, it was then "more than willing to accept [his] recommendations . . . ." Respondent also alleged that after "the record in the instant case was closed" it had come to the conclusion that the Union no longer represented a majority of employees in the bargaining unit.

On June 3, 1949, the Court of Appeals for the Fifth Circuit ordered that

"action on petitioner's motion should be deferred and the matter be referred back to the Board with directions to take evidence and report: (1) whether and to

what extent its order has been complied with by respondent; (2) whether and why, if the order has been complied with, the matter should not be dismissed as moot; and (3) if the matter is not moot, what recommendations or requests the Board has to make in the premises . . . ."

We think it plain from the cases that the employer's compliance with an order of the Board does not render the cause moot, depriving the Board of its opportunity to secure enforcement from an appropriate court.[4] Indeed, the Court of Appeals for the Fifth Circuit has apparently recognized this rule both before and after the decision in the instant cases.[5] A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree. As the Court of Appeals for the Second Circuit remarked, "no more is involved than whether what the law already condemned, the court shall forbid; and the fact that its judgment adds to existing

[4] *Labor Board* v. *Pennsylvania Greyhound Lines,* 303 U. S. 261, 271 (1938); *Consolidated Edison Co.* v. *Labor Board,* 305 U. S. 197, 230 (1938); *Labor Board* v. *Crompton-Highland Mills,* 337 U. S. 217, 225 (1949); *Labor Board* v. *Draper Corp.,* 159 F. 2d 294, 297 (C. A. 1st Cir. 1947); *Labor Board* v. *Remington Rand,* 94 F. 2d 862, 869–870 (C. A. 2d Cir. 1938); *Labor Board* v. *Condenser Corp.,* 128 F. 2d 67, 81 (C. A. 3d Cir. 1942); *Labor Board* v. *Baltimore Transit Co.,* 140 F. 2d 51, 55 (C. A. 4th Cir. 1944); *Labor Board* v. *Toledo Desk & Fixture Co.,* 158 F. 2d 426 (C. A. 6th Cir. 1946); *Labor Board* v. *Bachelder,* 125 F. 2d 387, 388 (C. A. 7th Cir. 1942); *Labor Board* v. *Swift & Co.,* 129 F. 2d 222, 224 (C. A. 8th Cir. 1942); *Labor Board* v. *American Potash & Chemical Corp.,* 98 F. 2d 488 (C. A. 9th Cir. 1938); *Pueblo Gas & Fuel Co.* v. *Labor Board,* 118 F. 2d 304, 307 (C. A. 10th Cir. 1941). Cf. *Federal Trade Commission* v. *Goodyear Tire & Rubber Co.,* 304 U. S. 257 (1938).

[5] *Labor Board* v. *Fickett-Brown Mfg. Co.,* 140 F. 2d 883, 884 (1944); *Labor Board* v. *The Cooper Co.,* 179 F. 2d 241 (1950).

sanctions that of punishment for contempt, is not a circumstance to which a court will ordinarily lend a friendly ear." *Labor Board* v. *General Motors Corp.,* 179 F. 2d 221, 222 (1950). The Act does not require the Board to play hide-and-seek with those guilty of unfair labor practices.

That the respondent doubts the Union's ability to muster a majority of the employees in the bargaining unit does not justify the denial of an enforcement decree. Explicit congressional policy stands in the way of permitting the employers to stall enforcement of the Board's orders on this ground. Under § 9 (c) of the Act "an employee or group of employees or any individual or labor organization acting in their behalf" may "assert that the individual or labor organization, which has been certified or is being currently recognized by their employer as the bargaining representative, is no longer a representative as defined in section 9 (a) . . . ." § 9 (c) (1) (A) (ii). Petitions by the employer concerning selection of bargaining representatives are limited to those "alleging that one or more individuals or labor organizations have presented to him a claim to be recognized as the representative defined in section 9 (a) . . . ." § 9 (c) (1) (B). To authorize the employer to assert diminution in membership in the certified union in an enforcement proceeding subverts the statutory mandate to leave these matters to the Board in separate proceedings under § 9 (c).[6]

---

[6] See *Labor Board* v. *Remington Rand,* 94 F. 2d 862, 869–870 (C. A. 2d Cir. 1938). See also, §§ 203.46, 203.47 of the Board's regulations under the Wagner Act, 11 Fed. Reg. 177A–605, 177A–610 (1946), and §§ 203.52 and 203.53 of the rules printed at 12 Fed. Reg. 5651, 5662 (1947); *Labor Board* v. *Biles-Coleman Lumber Co.,* 96 F. 2d 197 (C. A. 9th Cir. 1938). Compare *Franks Bros. Co.* v. *Labor Board,* 321 U. S. 702, 705–706 (1944).

The Board has held that it is the forum before which an employer may challenge a certified union's continued representative status, *Matter of Whitney's,* 81 N. L. R. B. 75 (1949), in § 9 (c) proceedings.

It is of course equally clear that a motion for leave to adduce additional evidence pursuant to § 10 (e) of the labor relations acts is "addressed to the sound judicial discretion of the court," *Southport Petroleum Co.* v. *Labor Board,* 315 U. S. 100, 104 (1942) ; *Labor Board* v. *Indiana & Michigan Electric Co.,* 318 U. S. 9 (1943). We are told that the order of the Court of Appeals is justified in this case because the issue of compliance, so clearly irrelevant in the ordinary course of review, is imbued with relevance should the respondent's counsel move to adduce additional evidence when the case reaches the Court of Appeals.

The cases are to the contrary. *Labor Board* v. *Condenser Corp.,* 128 F. 2d 67, 81 (C. A. 3d Cir. 1942); *Labor Board* v. *Swift & Co.,* 129 F. 2d 222, 224 (C. A. 8th Cir. 1942); *Labor Board* v. *American Potash & Chemical Corp.,* 98 F. 2d 488, 493 (C. A. 9th Cir. 1938), and cases therein cited. If compliance with an order of the Board is irrelevant to the reviewing court's function after the new evidence has been adduced, we do not see that there is point in adducing evidence of that compliance. This Court has emphasized that the "power to adduce additional evidence granted to the Circuit Court of Appeals by § 10 (e) cannot be employed to enlarge the statutory scope of judicial review." *Labor Board* v. *Donnelly Garment Co.,* 330 U. S. 219, 234–235 (1947). As the managers on the part of the House of Representatives for the Conference Committee reported concerning the Wagner Act, that statute contemplated that there be "immediately available to the Board an existing court decree to serve as a basis for contempt proceedings," in the event a renewal of the unfair practice occurs after the enforcement order. H. R. Rep. No. 1371, 74th Cong., 1st Sess., p. 5. See also H. R. Conf. Rep. No. 510, on H. R. 3020, 80th Cong., 1st Sess., p. 55; compare H. R. Rep. No. 245, on H. R. 3020, 80th Cong., 1st Sess., pp. 43, 93. Section 10 (e), which "in effect formulates a famil-

iar principle regarding newly discovered evidence," *Labor Board* v. *Donnelly Garment Co., supra,* 330 U. S. at 234, does not authorize a discretion so broad that evidence irrelevant as a matter of law may be considered "material." Compare *Griffin* v. *United States,* 336 U. S. 704, 708 (1949), with *United States* v. *Johnson,* 327 U. S. 106 (1946).

The cases cited by respondent do not touch this controlling issue. The order of the Court of Appeals must be vacated and the enforcement of the Board order decreed pursuant to § 10 (e), unless "extraordinary circumstances" are pleaded which justify the respondent's failure to urge its objections before the Board.

*It is so ordered.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE JACKSON joins, dissenting.†

Compliance with an order of the National Labor Relations Board is, of course, no defense to the Board's petition for judicial enforcement of its order. Therefore, a Court of Appeals would be abusing the authority conferred by § 10 (e) of the National Labor Relations Act, as amended by the Labor Management Relations Act, 1947,* if, upon such a petition for enforcement, it even tempo-

---

† [NOTE: This dissent applies also to No. 435, *National Labor Relations Board* v. *Pool Manufacturing Co., post,* p. 577.]

*Section 10 (e) provides in part:

"If either party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Board, its member, agent, or agency, the court may order such additional evidence to be taken before the Board, its members, agent, or agency, and to be made a part of the transcript." 61 Stat. 148, 29 U. S. C. (Supp. III) § 160 (e).

rarily withheld enforcement merely for the purpose of asking the Board to report to it whether the order had already been complied with. Even if it had, the Board is entitled to a formal decree as a safeguard against repetition of the unfair labor practice. If in the cases before us the Court of Appeals had, by seeking light from the Board on the issue of compliance, in effect ruled that compliance with an order of the Board was relevant to enforcement, it would be incumbent upon this Court, in the fair administration of law, to issue its discretionary writ of certiorari and reverse the orders of the Court of Appeals summarily.

But the action of the Court of Appeals in these two cases cannot fairly be interpreted as defiance of the settled principle of law that compliance by an employer with the Board's order is not a defense to an application for its enforcement. In a series of decisions prior to its actions in these two cases, the Court of Appeals for the Fifth Circuit, in common with all other circuits, has enforced orders of the Board despite allegations of compliance. Nor are these two cases to be interpreted as departures from the principle which that court has heretofore recognized and obeyed. It has explicitly advised us that the opinions and orders in these two cases "were not intended to be, they were not, departures" from the established rule. *Labor Board* v. *Cooper Co.*, 179 F. 2d 241. Whatever justification there may have been when we granted certiorari for attributing to the court below a *volte-face* on its own repeated application of a settled principle of law, there was none after its decision in the *Cooper* case ten days later. Yet it is only by attributing to the Court of Appeals a departure which that court has disavowed that it may be charged with an abuse of discretion which alone would have warranted our taking these cases for review.

The fact is that in both these cases representations were made to the Court of Appeals of circumstances arising subsequent to the orders issued by the Board which amount to more than a claim that the employer had complied with what the Board had directed. The claims concern change in the union affiliation of employees and recalcitrance on the part of the union, and not of the employer, toward effectuating the Board's order. To be sure, there was a clause in the court's order which, taken abstractly, looked as though the court desired to be informed on the issue of compliance and the Court of Appeals did not spell out with particularity these other claims, but they were embraced in a catch-all clause for further "evidence and report" by the Board.

This raises for me important issues of judicial administration. Due regard for the considerations that should govern the exercise of our discretionary jurisdiction and for the effective functioning of the Courts of Appeals in the whole scheme of the federal judiciary indicates dismissal of these writs.

We are dealing with one of the appellate tribunals of the United States to which Congress has seen fit to commit the final determination of this type of controversy, subject only to the reviewing power of this Court. Review is to be exercised, however, not as a matter of course, but only in those rare instances where constitutional issues, or conflicts of circuits, or obvious considerations of a public importance call for our adjudication. In establishing the Courts of Appeals, Congress intended to create courts of great dignity and ability whose decisions were to be final except in the very limited instances where the Supreme Bench should pronounce for the whole nation. This design for the Courts of Appeals was powerfully reinforced by the Judiciary Act of 1925, 43 Stat. 936, in that it withdrew all but a few categories of cases from the obligatory jurisdiction of this Court. The volume of

business that would be drawn to this Court by the overriding national importance of the issues was bound to be so heavy that adequate disposition of them was assumed to preclude the grant of certiorari in cases, however erroneously decided below, in which the incidence of error was too small compared with the drain that their consideration would make on the thought and energy demanded of this Court by the cases which inevitably belong here. And so the Court has said again and again that the writ of certiorari ought not to be employed to bring here cases which, in their essential impact, concern a restricted and perhaps a unique set of circumstances and do not involve the pronouncement by a Court of Appeals of a general doctrine on which this Court ought to have the last say.

No candid student of the actual operation of certiorari can feel confident that the criteria professed for its exercise have been adequately respected. This Court is too frequently engaged in deciding cases which ought not to occupy the highest Court in the land, because they divert its energy from those matters to which it cannot give too much unburdened thought. And when comparison is made between the issues at stake in petitions that have been granted and those in which petitions have been denied, the contrast is at times glaring.

This has two consequences that are to be deprecated in the administration of the federal courts, and they are avoidable without aiming at the moon. By taking cases that ought not to be taken we obviously encourage petitions to be filed that have no excuse for being here. The fact that term after term hundreds of petitions are denied indicates that our screening process is such as to encourage the hope that is eternal in the breast of losing counsel. One does not have to be an easy generalizer of national characteristics to believe that litigiousness is one of our besetting sins. A relaxed observance of the considera-

tions that supposedly govern our certiorari jurisdiction is not calculated to discourage litigiousness.

Equally undesirable is the effect, however insidious, upon Courts of Appeals. If, barring only exceptional cases, they are to be deemed final courts of appeals, consciousness of such responsibility will elicit in them, assuming they are manned by judges fit for their tasks, the qualities appropriate for such responsibility. Contrariwise, encouragement in regarding Courts of Appeals merely as way-stations to this Court is bound to have a weakening effect on the administration of tribunals whose authority and qualities we should be alert to promote.

These are general considerations, but due regard for them goes, I believe, to the very marrow of high judicial performance. Let me apply them to the cases in hand. A year ago three circuit judges of long experience deferred motions of the National Labor Relations Board for enforcement of its orders (one of which had been outstanding for two and one-half years) by requesting the Board for "additional evidence" which these judges deemed material. The court made this request under § 10 (e) of the National Labor Relations Act, as amended by the Labor Management Relations Act, with respect to various claims, outlined above, as they emerged in the proceedings before it. When it was confronted with the employers' applications for leave to adduce such additional evidence, the court presumably examined the cases in this Court as to the nature of its power to grant them and noted that our cases held that such applications are "addressed to the sound judicial discretion of the court." *Southport Petroleum Co.* v. *Labor Board,* 315 U. S. 100, 104; *Labor Board* v. *Donnelly Garment Co.,* 330 U. S. 219, 233–34. In granting the applications, the court, expressly reserving decision on the merits, merely referred the matters back to the Board for its assistance in furnishing fur-

ther information and for its recommendations and requests "in the light of such further information." Indeed, that court has rather plaintively explained that in the two cases which are now reversed "nothing was decided." *Labor Board* v. *Cooper Co.*, 179 F. 2d 241.

The Court notes that the Board has held that the continued majority status of a certified union may be challenged by an employer in § 9 (c) proceedings. *Whitney's,* 81 N. L. R. B. 75. There is neither explicit authorization nor explicit denial in the statute of the right of an employer to make such a challenge in enforcement proceedings. Nothing in the text or context of the statute or any consideration underlying its policy precludes the relevance of continued majority status to enforcement, especially where loss of majority may be due to employee dissatisfaction with alleged union intransigence. It appears to me arbitrary to deny to a Court of Appeals, in the fair exercise of its discretion under § 10 (e), the right to ask the Board for light on this issue, if for no other reason than that the Board's views would be helpful in the judicial determination of the issue.

Fully mindful of the heavy load of cases before the Board, I venture to suggest that it could have speedily disposed of the matters that on the record appeared to trouble the Court of Appeals, could have reported back to the court, and could have secured a prompt disposition of its petitions for enforcement. Any adverse rulings by the court could then have been brought here by the Board, not with any ambiguity inherent in a discretionary ruling, but with the full clarity of an adjudication on the merits. Instead, the Board comes here to review the court's interim orders, petitions for certiorari resting on a special set of unique circumstances are granted, and the Court of Appeals is now reversed by attributing to it a disavowed disregard of an important principle in the administration of the Labor Management Relations Act.

In the light of the entire series of decisions by the Court of Appeals for the Fifth Circuit, both before and after the orders in this case, it does not seem to me reasonable to interpret the orders now before us as demands on the Board for findings merely as to compliance with the orders sought to be enforced. That court's decisions preclude such intendment. Since the record permits, we ought to attribute to a Court of Appeals not a willful disregard of principle and, as such, an abuse of discretion, but an honest desire to get light on happenings after the Board's orders relevant to its duties as a court of equity. Courts of Appeals are also human institutions. By attributing to the Court of Appeals an abusive exercise of discretion when the record may fairly be otherwise interpreted, we not only needlessly rebuke that court; we take action calculated to chill other judges in exercising with utter freedom a discretion which we have heretofore pronounced they possess.

I would leave the action of the Court of Appeals to take the course which I believe wisely should have been taken when their orders were entered. To that end, I would dismiss these writs as improvidently granted.