**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Peter WEBER and Local 825, International Union of Operating Engineers, AFL–CIO, Respondents.**

**No. 16396.**

United States Court of Appeals Third Circuit.

Argued June 20, 1967.

Decided Aug. 28, 1967.

Warren M. Davison, N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael N. Sohn, Atty., N. L. R. B., on the brief), for petitioner.

Earl S. Aronson, Newark, N. J., (Thomas E. Durkin, Jr., Newark, N. J., on the brief), for respondents.

Before KALODNER and HASTIE, Circuit Judges, and VAN DUSEN, District Judge.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

This unfair labor practice case began in 1964 with the filing of charges and the subsequent issuance of a complaint against the respondents, Peter Weber and Local 825, International Union of Operating Engineers. After a hearing before a trial examiner, but before decision, the parties settled the controversy by formal stipulation. In this agreement the respondents admitted that they had engaged in certain conduct and that in so acting they had violated specified unfair labor practice provisions of the National Labor Relations Act. The stipulation also authorized the Board to issue a cease and desist order and to require the posting of appropriate notices. In September, 1965, the Board issued such an order. The stipulation said nothing about court enforcement of the authorized Board order.

In October, 1966, another unfair labor practice charge was filed against the respondents alleging new misconduct proscribed by the same unfair labor practice provisions that had been involved in the earlier proceedings and order. In the light of these new charges, and before they resulted in a formal complaint,[1] the Board filed the present petition asking us to enforce its 1965 order.

The respondents' principal objection to present enforcement of the 1965 order is based upon the following provision of section 101.9(c) of the Board's Regulations:

" * * * If the respondent refuses to comply with the terms of a stipulation settlement providing solely for the entry of a Board order, the Board may petition the court for enforcement of its order, pursuant to section 10 of the National Labor Relations Act." 29 C.F.R. Part 101—Statements of Procedure, Series 8, 122.

The respondents argue that this provision is an implied term of their stipulation

---

1. A formal complaint did issue in due course. A hearing has been held and decision is now pending.

and, therefore, a limitation upon the Board's right to seek enforcement of the consent order. Accordingly, they contend that proof that they have "refuse[d] to comply with the terms of [the] * * * stipulation settlement" is prerequisite to court enforcement of the Board's order.

■ We consider first what the situation would be if the Board's Regulations did not contain any relevant provision. In that case, since the stipulation itself says nothing about court enforcement, the court's power and duty to enforce the consent order would be the same as in the case of an order entered upon a contested hearing, except that the merits of the original complaint would be conceded. Under section 10(e) of the Act, the court is authorized to enforce any proper Board order. Even if the respondent has done all of the things ordered by the Board, the obligation of a cease and desist order is a continuing one, so that compliance does not bar judicial enforcement. NLRB v. Mexia Textile Mills, 1950, 339 U.S. 563, 70 S.Ct. 833, 94 L.Ed. 1067; NLRB v. Buitoni Foods Corp., 3d Cir., 1962, 298 F.2d 169. Therefore, but for section 101.9(c), the respondents would have no defense.

■ We come now to the interpretation of the quoted provision of the Board's Regulations. We are concerned particularly with the phrase, "if the respondent refuses to comply with the terms of a stipulation settlement". This language refers most obviously to the specific things which the stipulation requires the respondent to do in correcting the conduct in suit, pledging not to repeat it and posting notices recognizing the rights in suit and promising to respect them. In ordinary usage, such "compliance" is something that can be and is required to be accomplished fully by doing and refraining from doing specified things within a short time after the issuance of the Board's order. True, the command "to cease and desist" also imposes a continuing obligation, but it is not illogical to employ terminology to dis-

tinguish the duty of continuing obedience of an order from the duty of prompt compliance with it. Indeed, the phrase "refuse to comply", as used in section 101.9 (c), itself suggests concern with recalcitrance in the face of demand at the time the Board's order is made effective rather than disregard of a continuing duty at some future time.

■■ We are persuaded that section 101.9(c) has this limited meaning by another provision of the Regulations which seems applicable here. Section 101.13(b) reads as follows:

"(b) If the respondent effects full compliance with the terms of the order, the regional director submits a report to that effect to Washington, D. C., after which the case may be closed. Despite compliance, however, the Board's order is a continuing one; therefore, the closing of a case on compliance is necessarily conditioned upon the continued observance of that order; and in some cases it is deemed desirable, notwithstanding compliance, to implement the order with an enforcing decree * * *."

This language both distinguishes "compliance" from "continued observance" of a Board order and serves notice that after compliance, and even after the closing of a case in the Board's records, the Board may reactivate the matter and seek judicial enforcement of its order if this course seems desirable to insure the continued observance of its mandate. We have considered that this section makes no mention of consent orders, or for that matter orders entered after a contest. We read it as a comprehensive regulation, applicable to the enforcement of the Board's orders generally, regardless of the procedure that led to a particular order.

If the respondents understood that section 101.9 described one situation in which they might be subjected to a judicial decree enforcing the consent order against them, they should also have recognized section 101.13(b) as describing another. In these circumstances, we find

nothing in the Board's procedure here which violates the statute or its Regulations, or defeats any reasonable understanding upon which the respondents might have based their stipulation for settlement and a consent order.

The order of the Board will be enforced.[2]

2. The Board properly concedes that the operation of our decree will be prospective only and, therefore, that the respondents' conduct which is the subject of the new complaint now pending before a trial examiner, cannot become a violation of this decree.