**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AUTOTRONICS, INC., Respondent.**

**No. 78–1656.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1979.

Decided April 16, 1979.

Rehearing Denied May 10, 1979.

John D. Burgoyne, Asst. Gen. Counsel, N. L. R. B., Washington, D. C. (argued), Jerrold J. Wohlgemuth, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on brief, for petitioner.

Donald W. Jones of Prewitt, Jones & Karchmer, Springfield, Mo., argued, for respondent.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

GIBSON, Chief Judge.

The National Labor Relations Board petitions for enforcement of its order against respondent Autotronics, Inc., entered June 28, 1978, pursuant to a "Stipulation for Board Order and Court Decree." Autotronics, the International Union, Allied Industrial Workers of America, AFL–CIO (union), and the General Counsel of the Board entered into the stipulation on April 25, 1978, subject to approval by the Board. The stipulation provides for entry of a consent order by the Board and a consent judgment by an appropriate United States Court of Appeals whereby Autotronics would be required to cease and desist from certain unfair labor practices, to post a notice and to make whole certain employees for losses suffered by reason of respondent's conduct. The parties waived all other procedure before the Board, and respondent waived its right to contest entry of the consent judgment and to receive notice of the application.

Autotronics asserts that the stipulation cannot be the basis for an enforcement order, because of certain irregularities in the manner in which the stipulation was prepared and executed. On this basis it filed a motion for reconsideration by the Board which the Board denied on August 17, 1978. We deny enforcement of the Board's order.

The Board's General Counsel issued a complaint against respondent on November 9, 1977, alleging a number of unfair labor practices.[1] Originally, respondent's president, Charles Womack, attempted to handle the proceedings by filing a one-sentence answer generally denying the allegations of the complaint. This prompted transfer of the proceedings to the Board for summary judgment, and the Board ordered respondent to show cause in writing by December 28, 1977, why the summary judgment motion should not be granted. On December 12, 1977, Donald W. Jones entered his appearance as counsel for respondent and became the attorney of record for respondent in these proceedings before the Board and in a companion action pending in the Western District of Missouri seeking a temporary injunction pursuant to section 10(j) of the National Labor Relations Act, 29 U.S.C.

---

* The Honorable William C. Hanson, Senior United States District Judge, Southern District of Iowa, sitting by designation.

1. The allegations of unfair labor practices related to illegal threats, illegally imposing terms of employment, suspending one employee, discharging an employee, temporarily closing business because of union activity, making unilateral changes in employment conditions, and failing to carry out obligations under a collective bargaining agreement. The Board charged Autotronics with violating section 8(a)(1), (3), (4), and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), (4), and (5) (1973).

§ 160(j). Jones filed a timely response to the show cause order, and on February 7, 1978, the Board General Counsel attorneys filed a motion to withdraw their earlier motion to transfer proceedings to the Board for summary judgment. The Board denied the motion for summary judgment on February 13, 1978, and returned the case to the Division of Administrative Law Judges, whereupon the Board Regional Director scheduled a hearing for April 24, 1978, at Joplin, Missouri.

Four days prior to the scheduled hearing, counsel for the Board General Counsel, Jeffrey Lerer, the union, and Womack executed a "memorandum of agreement" that contemplated the signing of a formal settlement agreement disposing of the allegations of the complaint. This memorandum contained provisions for entry of a court decree and a provision reciting that the respondent had initiated the settlement discussions.[2] On April 25, 1978, Womack signed a formal stipulation which was approved by the Board and explicitly made the basis for its decision and order issued June 28, 1978.

The Board sent a copy of the decision and order to Jones as respondent's attorney, and also, on July 5, 1978, the Regional Director sent him a letter requesting notification of any action taken to comply with the order. On July 8, Jones replied in a letter to the Regional Director. Jones requested the Regional Director to file with the Board a request to withdraw its decision and order approving the stipulation in order that settlement discussions could resume with him as respondent's attorney of record. Jones asserted that unethical conduct on the part of the Board attorneys should preclude the Board from accepting the stipulation. In particular, he contended that his exclusion from the settlement discussions was improper because he was the respondent's attorney of record; that Womack had not fully understood the agreement and had been subjected to coercive pressure by the Board attorneys; that in Jones's opinion, based upon the disposition of the section 10(j) injunction action, respondent could successfully defend against the allegations of the complaint; and that the transmission of the stipulation by the Regional Office to the Board without serving a copy upon respondent's attorney of record constituted an *ex parte* communication to the Board in flagrant breach of the Board's own rules of procedure.[3] Jones also indicated that Autotronics would comply with the order to protect it from contempt charges, but that by complying it did not intend to waive its right to request reconsideration.[4]

The Regional Director responded to Jones's letter by denying that Jones represented Autotronics at the time of the settlement or thereafter.[5] The Director took the

2. A provision of the memorandum stated:
The Settlement Conference held on this date, April 20, 1978 was initiated by the Respondent. General Counsel was reluctant to enter into settlement discussions until assurances was [*sic*] given by Respondent that it would not be necessary to go through his attorney in the commencement of this meeting. Upon receiving said assurances from the Respondent, settlement discussions commenced and culminated into this Agreement.

3. 29 C.F.R. § 102.111 reads in part:
(b) Whenever these rules require or permit the service of pleadings or other papers upon a party, a copy shall also be served on any attorney or other representative of the party who has entered a written appearance in the proceeding on behalf of the party. If a party is represented by more than one attorney or representative, service upon any one of such persons in addition to the party shall satisfy this requirement.

4. Autotronics now asserts that the application for enforcement is moot because it has fully complied with the Board order. We note that generally compliance is insufficient to render moot an application for enforcement of a Board order because of the independent value of a continuing injunction. *NLRB v. Mexia Textile Mills*, 339 U.S. 563, 567, 70 S.Ct. 833, 94 L.Ed. 1067 (1950); *NLRB v. Douglas & Lomason Co.*, 443 F.2d 291, 294 (8th Cir. 1971). Because of our disposition of this case, it is unnecessary to determine if special equitable considerations might warrant a departure from this rule.

5. The Regional Director's letter stated in part:
[I]t is the position of this office that you no longer represent the Respondent and have not represented the Respondent since Mr. Womack executed this Memorandum of Agreement on April 20, 1978. * * * Further, we would strenuously object to any attempts by either yourself or Mr. Womack

position that Womack had discharged Jones by waiving the right to assistance of counsel, and that Jones had been fully informed of the settlement discussions after the informal agreement had been signed, even though Jones had never been provided with a copy of the agreement or the formal stipulation.

Respondent, through Jones, moved to set aside the Board order and stipulation on July 14, 1978, and Womack responded to the letter of the Regional Director. First, Womack stated that Jones had been and continued to be respondent's attorney of record. He then explained the circumstances of the settlement discussion. Womack claimed that on April 20 the Board attorney, Lerer, telephoned him to discuss the unfair labor practice charges. Lerer allegedly stated that the union was considering dropping charges. He asked how the company was preparing for the formal hearing and discussed how long the hearing would run. When Womack stated that he would be unable to attend the hearing or would have to close the plant because of lack of supervision, Lerer allegedly indicated that closing could result in further unfair labor practice charges, and suggested coming over to Womack's office accompanied by the union representative to "work something out." Womack agreed, and Lerer and the union representative arrived at the plant after lunch. After some discussion, Womack told Lerer to draft his proposal while Womack returned to the shop. Lerer returned with the proposal later that day, and Womack stated:

> Upon his return I was called to the lobby where I met Mr. Lerer. I began to scan the document when I recognized a statement on the first page which stated that the Company had bypassed its attorney and contacted the Board in pursuit of the settlement agreement. I objected strenuously to inclusion of an untruth in the document but Mr. Lerer countered that the statement had to be included because of professional ethics. Anyway, he added, you don't want Mr. Jones because he

has never won a case before the Board and you would just be wasting your money which we know you don't have.

Womack claims he then signed the agreement. He also noted that the Board was well aware that Autotronics was recovering from a bankruptcy proceeding, because the company had requested the Board to appoint counsel because of Autotronics' impoverished condition.

The Board's order, issued August 7, 1978, denying the motion to set aside its previous decision and order, practically ignores the serious allegations of Jones and Womack. The Board merely emphasized the existence of the written agreement and that this memorandum contained a provision for a consent decree and alleged reluctance on the part of the Board attorney to discuss settlement with Womack until he gave assurances "that it would not be necessary to go through his attorney in the commencement of this meeting." This summary recitation of the provisions of the memorandum does not reflect meaningful consideration of the charges that the memorandum itself was procured by improper methods.

██ The allegations of Jones and Womack charge grave unethical conduct on the part of the Board attorney. The American Bar Association Code of Professional Responsibility Disciplinary Rule 7–104 provides:

> DR 7–104 Communicating With One of Adverse Interest.
>
> (A) During the course of his representation of a client a lawyer shall not:
>
> (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.
>
> (2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable

to seek reconsideration and review of the Board order recently issued which was pursuant to the terms of the stipulation Mr. Womack voluntarily executed.

possibility of being in conflict with the interests of his client.

The Board attorney clearly violated this rule by discussing settlement with Womack before obtaining Jones's consent, regardless of whether the Board attorney discussed the agreement with Jones after Womack signed it. This rule was formulated to obviate the possibility of taking advantage of an uncounseled party. The coercive tactics allegedly engaged in by the Board attorney illustrate the potential abuse in this situation. These tactics included lulling Womack into believing that the Board attorney could represent his interests, threatening further unfair labor practice charges, playing upon the known financial insecurity of the company, and derogating the abilities of Autotronics' counsel of record.

The Regional Director's position, that Autotronics was not represented by counsel at the time of the settlement discussions, cannot be credited. The Board did not adhere to that position when it sent Jones a copy of the June 28 decision and order and the letter on July 5, 1978. Even the relied-upon provision of the memorandum, stating, "it would not be necessary to go through *his* attorney" (emphasis supplied), reveals that Womack did have an attorney. This provision merely indicates that Womack had been convinced that he did not need to have his attorney present at the discussion; it does not suggest that he discharged his attorney. Furthermore, the Board's brief now concedes that Jones was counsel of record throughout the proceedings.

Jones also asserts that the Board violated its own rules against *ex parte* communications when the Regional Director's office transmitted the agreement and stipulation to the Board for approval without serving copies on respondent's attorney of record. *See* 29 C.F.R. §§ 102.111(b), 102.126, 102.-128(e), 102.129(a). In his July 14 motion, Jones requested the Board to follow the provisions of 29 C.F.R. § 102.112 for failure to comply with the requirements of service by either rejecting the memorandum and

stipulation or reconsidering the June 28 decision and order after proper service. The Board disposed of this claim in its August 17 order by noting that according to the stipulation the parties waived any further procedure to which they might be entitled under the rules and regulations of the Board. In view of the Board's failure to address the challenge to the validity of the stipulation, the finding of a waiver is not persuasive. Indeed, the existence of regulations providing for service upon attorneys of record would seem to imply Board recognition of the need to avoid potential abuses resulting from dealing directly with the charged party and bypassing its counsel.

Upon careful consideration of the entire record below, we conclude that we cannot enforce the Board order based upon the stipulation. Womack and Jones's letters clearly tainted the stipulation by their allegations of coercive and unethical conduct on the part of the Board attorney, and the Board failed to present adequate evidence to refute this taint. A stipulation subject to this cloud of improprieties cannot be considered substantial evidence.[6]

Enforcement denied.

## ORDER DENYING PETITION FOR REHEARING

■ Although we deny the National Labor Relations Board's Petition for Rehearing, we note that the failure to notify respondent's attorney was not entirely the fault of the Board's counsel. The actions of the respondent may have significantly contributed to the Board's counsel's ignoring the respondent's attorney of record, and may have set in motion the course of events regarding the settlement discussions. However, we think it was incumbent upon the Board's attorney, before discussing settlement directly with Autotronics, either to contact respondent's attorney of record or procure a written statement withdrawing or denying the attorney's written appearance in the proceeding on respondent's behalf.

---

**6.** The stipulation provided: "This Stipulation, together with the charges, order consolidating cases, complaint and notice of hearing shall constitute the entire record herein."