**FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF THE AIR FORCE, Oklahoma City Logistics Center, Tinker Air Force Base, Oklahoma, Respondent.**

No. 83–1969.

United States Court of Appeals, District of Columbia Circuit.

Argued April 12, 1984.

Decided June 1, 1984.

Ruth E. Peters, Sol., Federal Labor Relations Authority, Washington, D.C., with whom Steven H. Svartz, Deputy Sol., and Pamela P. Johnson, Atty., Federal Labor Relations Authority, Washington, D.C., were on the brief, for petitioner. William E. Persina, Atty., Federal Labor Relations Authority, Washington, D.C., also entered an appearance for petitioner.

Richard Dennis Hipple, Atty., U.S. Dept. of the Air Force, Washington, D.C., for respondent. William Kanter, Atty., U.S. Dept. of Justice, Washington, D.C., also entered an appearance for respondent.

Before WRIGHT, TAMM and WILKEY, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

Circuit Judge WILKEY dissents.

1. The policy in effect before April 17, 1980 was a result of negotiations between the American Federation of Government Employees, Local 916, AFL–CIO (the union) and the Air Force. Appendix Volume I (App.Vol. I) at 12–13.

TAMM, Circuit Judge:

This case arises out of an unfair labor practice proceeding brought before the Federal Labor Relations Authority (the Authority). The Authority found that the United States Department of the Air Force, Oklahoma City Logistics Center, Tinker Air Force Base, Oklahoma (Air Force) committed an unfair labor practice in violation of the Federal Service Labor-Management Relations Statute (the Act), 5 U.S.C. §§ 7101–7135 (1982), by unilaterally implementing a change in the policy regarding facial hair on employees who use respirators. The Authority directed the Air Force to take certain steps to remedy this violation. The Authority now petitions for enforcement of its order. For the reasons stated below, we uphold and enforce the Authority's order.

## I. BACKGROUND

### A. *Facts*

The facts in this case are undisputed. Until April 17, 1980, civilian employees at Tinker Air Force Base in positions requiring the use of respirators were allowed to wear trimmed facial hair so long as the hair did not interfere with the respirator sealing surface.[1] On April 17, 1980, the commander at Tinker Air Force Base issued a policy letter stating that "individuals must be clean shaven in the area respirator face piece meets the face." Appendix Volume I (App.Vol. I) at 13. It is uncontested that the Air Force implemented this policy letter without giving the union notice or an opportunity to bargain. Employees who refused to shave their beards in compliance with the policy letter were subjected to disciplinary action. *Id.* at 14.

On September 10, 1980, the American Federation of Government Employees, Local 916, AFL–CIO (the union) filed an unfair labor practice charge with the Authority asserting that the April 17, 1980 policy letter violated sections 7116(a)(1) and (5) of the Act.[2] The Authority issued a complaint

2. Sections 7116(a)(1) and (5) provide:
 [I]t shall be an unfair labor practice for an agency—

alleging that the Air Force violated its duty to bargain in good faith by implementing the April 17, 1980 policy letter. App.Vol. I at 4.

After a full hearing, the Administrative Law Judge (ALJ) concluded that the April policy letter effected a unilateral change in policy in violation of the Act. App.Vol. I at 17. On September 9, 1983, the Authority issued a decision adopting the ALJ's findings and conclusions. *United States Department of Defense, Department of The Air Force, Oklahoma City Air Logistics Center, Tinker Air Force Base, Oklahoma and American Federation of Government Employees, Local 916, AFL–CIO,* 8 FLRA No. 126 at 740 (1982). The Authority ordered the Air Force to (1) cease from unilaterally changing the facial hair policy without affording the union an opportunity to bargain; (2) cease from interfering with employees' exercise of their statutory rights; (3) rescind the April 17, 1980 policy and, upon request, bargain on the substance, impact, and implementation of any intended change with respect to the facial hair policy; and (4) post notices indicating that the above actions had been taken. *Id.* at 743–44.

The action is before us on the Authority's petition for enforcement of its order. The Air Force does not dispute the Authority's finding that the change in policy con-

 (1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;
 ....
 (5) to refuse to consult or negotiate in good faith with a labor organization as required by this chapter;
 ....
5 U.S.C. §§ 7116(a)(1), (5) (1982).

**3.** The 1982 contract provides in relevant part: "The Employer agrees to comply fully with all provisions of Executive Order No. 12196 as implemented within [the Department of Defense]." Brief for United States Department of the Air Force at 5.
 Executive Order 12196 states that the head of each agency shall "[c]omply with all standards issued under section 6 of [the Occupational Safety and Health Act] ...." Exec.Order No. 12,196, 3 C.F.R. 145 (1981).

**4.** The Occupational Health and Safety Administration's (OSHA) regulation regarding respirator use reads in relevant part:

stituted an unfair labor practice. The Air Force opposes the application for enforcement on the ground that the order was mooted by the adoption of a new collective bargaining agreement on June 1, 1982 (the 1982 contract), some five days after the Authority issued the order.

The 1982 contract mandates compliance with Executive Order 12196, which in turn requires compliance with regulations promulgated by the Occupational Safety and Health Administration (OSHA).[3] OSHA has adopted respirator use standards that, according to the Air Force, require employees to be clean shaven.[4] The Air Force contends that it effectively complied with the Authority's order to bargain over the facial hair policy because it bargained over the terms of the 1982 contract. The Air Force maintains that enforcement of the Authority's order would simply compel renegotiation of an issue that already was addressed while bargaining over the 1982 contract.

For the reasons expressed below, we conclude that the Authority's order is not moot and accordingly must be enforced.

## II. DISCUSSION

 The sole issue before us is whether adoption of the 1982 contract moots this enforcement proceeding. We conclude that it does not.[5] It is well settled in the con-

Respirators shall not be worn when conditions prevent a good face seal. Such conditions may be a growth of beard, sideburns, a skull cap that projects under the face-piece, or temple pieces on glasses. Also, the absence of one or both dentures can seriously affect the fit of a facepiece. The worker's diligence in observing these factors shall be evaluated by periodic check. To assure proper protection, the facepiece fit shall be checked by the wearer each time he puts on the respirator.
29 C.F.R. § 1910.134(e)(5)(i) (1983).

**5.** As noted, the Air Force does not contest the Federal Labor Relations Authority's (the Authority) unfair labor practice ruling. After a review of the record, we find ample evidence to support the Authority's conclusion that the April 1980 policy letter constituted a unilateral change in conditions of employment without bargaining. Moreover, we find no reason to upset the Authority's determination that this action violated section 7116 of the Act.

text of labor relations that "the employer's compliance with an order of the Board does not render [an enforcement proceeding] moot ...." *NLRB v. Raytheon Co.*, 398 U.S. 25, 27, 90 S.Ct. 1547, 1548, 26 L.Ed.2d 21 (1970) (quoting *NLRB v. Mexia Textile Mills, Inc.*, 339 U.S. 563, 567, 70 S.Ct. 826, 828, 94 L.Ed. 1067 (1950)).[6] The rationale for this rule is that cease and desist orders generally impose on employers a continuing obligation to refrain from violations of employees' rights. An enforcement decree ensures against future resumption of the unfair labor practice. Thus, even if the employer has ceased the practices that precipitated the order, an enforcement proceeding is not moot. *See NLRB v. Raytheon Co.*, 398 U.S. at 28, 90 S.Ct. at 1549.

■ In the instant case, the Authority's order charges the Air Force with a continuing obligation to bargain before instituting a unilateral change in facial hair policy. This obligation remains throughout the parties' ongoing relationship. The Air Force must bargain before instituting a unilateral change in policy regardless of whether a facial hair policy has been agreed to in a subsequent contract. *See NLRB v. International Union of Operating Engineers*, 532 F.2d 902, 905 (3d Cir.

1976), *cert. denied*, 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 (1977) (although disputed contractual language no longer in existence, an order directed toward a refusal to bargain cannot be considered moot). Adoption of the 1982 contract, therefore, does not obviate the need for enforcement. Thus, even if the Air Force has bargained during the 1982 contract negotiations over the substance of the facial hair policy, we reject the contention that this enforcement proceeding is thereby rendered moot.[7]

Our conclusion that the enforcement proceeding is not moot is further compelled by the facts in this case. Although the Air Force asserts that it has effectively complied with the order, it presents no affirmative evidence indicating that the parties in fact bargained over the disputed facial hair policy during the 1982 contract negotiations. Rather, the Air Force's argument is based on the assertion that the text of the 1982 contract incorporates a provision dealing with facial hair. The Air Force maintains that because the contract addresses facial hair, the parties necessarily negotiated over the issue.

The text of the 1982 contract alone does not provide persuasive evidence that the parties actually bargained over a facial hair

**6.** Private sector precedent regarding the need to enforce orders of the National Labor Relations Board (NLRB) is a relevant guideline in this case. The role of the Authority in the public sector is analogous to that of the NLRB in the private sector. *See Bureau of Alcohol, Tobacco, and Firearms v. FLRA*, —— U.S. ——, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983); *Library of Congress v. FLRA*, 699 F.2d 1280, 1287 (D.C.Cir. 1983).

**7.** An order can become moot if the situation has changed so that "there is no reasonable expectation that the wrong will be repeated." *NLRB v. Raytheon Co.*, 398 U.S. 25, 27, 90 S.Ct. 1547, 1549, 26 L.Ed.2d 21 (1970) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). The Air Force asserts that adoption of the new contract precludes repetition of the violation. This argument ignores the basis of the Authority's order. The order was not directed to the terms of the previous contract or to the substance of a facial hair policy. Rather, it addressed the Air Force's unlawful failure to bargain over a *change* in policy. Any facial hair policy contained in the 1982 contract is subject to change. Adoption of the 1982 contract thus does not eliminate the

possibility that the unlawful acts will be repeated. Indeed, all indications in the record point to the opposite conclusion. Currently pending before the Authority is a claim that on May 27, 1983 (after adoption of the 1982 contract), the Air Force committed an unfair labor practice in violation of the Act by unilaterally changing its policy to require that employees who work with respirators be clean shaven. Reply Brief for the Federal Labor Relations Authority at A–1. The pending claim thus charges the Air Force with exactly the same violation that resulted in the order in the instant case. While we express no view as to the merits of this claim, we believe it illustrates the importance of enforcement to guard against repetition of the same unlawful acts.

The Air Force suggests that the issues in the instant case will be or should be resolved in the pending proceeding before the Authority. As we have already explained in the text, however, even if the proceeding results in a determination that the 1982 contract in fact includes a negotiated facial hair policy, the order before us is not moot.

policy in compliance with the Authority's order. The Air Force's position is based on a clause in the 1982 contract that outlines the parties' general agreement to maintain safety standards in the workplace. The contractual provision contains no language specifically addressing facial hair. Instead, the provision simply incorporates an executive order that requires compliance with OSHA standards which establish guidelines for facial hair on employees using respirators. From this broad contractual provision, we cannot infer that the parties bargained over the facial hair policy in the manner contemplated by the Authority.

Moreover, even if we concluded that the parties in fact bargained over the substance of the facial hair policy, the Air Force still has not shown compliance with the order. The Authority's order in this case directed the Air Force to take several distinct actions to remedy the effects of the unfair labor practice. Assuming for purposes of argument that the Air Force did in fact bargain over the disputed facial hair policy during the 1982 contract negotiations, it has complied with only *one portion* of the Authority's order—namely, the requirement that the Air Force, upon request, bargain over the *substance* of the policy. The Air Force does not even allege that it has complied with the other portions of the Authority's order. Thus, even if we accept the Air Force's assertion that bargaining has occurred, which we do not, we would not find the Authority's order moot because substantial portions of its terms remain unfulfilled.[8]

---

**8.** The additional portions of the Authority's order serve important remedial functions: (1) to provide for bargaining over the impact and implementation of the change in facial hair policy, (2) to notify employees of their organizational rights, and (3) to ensure that the employer refrains from similar or continuing unlawful activities. Courts have long recognized that orders in the labor relations area need not be concerned solely with the isolated incident that precipitated an unfair labor practice charge. Rather, the NLRB and the FLRA have an obligation to protect the continuing right of employees to engage in concerted activity. *See NLRB v. Raytheon Co.,* 398 U.S. 25, 27, 90 S.Ct. 1547, 1548, 26 L.Ed.2d 195 (1970); *American Fed'n of*

### III. Conclusion

Because we find that the Authority's uncontested order was not mooted by the subsequent adoption of a new contract, we grant the Authority's application for enforcement of its order.[9]

*It is so ordered.*

WILKEY, Circuit Judge: I respectfully dissent.

*Gov't Employees v. FLRA,* 716 F.2d 47, 51 (D.C. Cir.1983).

**9.** Enforcement of the order will not, as the Air Force suggests, violate the terms of the current contract. The order is designed to remedy the past violation and to require the Air Force to comply with its statutory obligations in the future. Although the order requires rescission of the April 1980 policy letter, it does not control policies adopted under subsequent contracts. The current facial hair policy is controlled by and must be evaluated under the 1982 contract. Any bargaining over the substance of the facial hair policy will presumably have to take into consideration the terms of the 1982 contract.