**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 27 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

NATIONAL LABOR RELATIONS
BOARD,

      Petitioner,

v.

KING SOOPERS, INC.,

      Respondent.

No. 00-9540

---

## ON APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD
### (Board Case Nos. 27-CA-14882, et al.)

---

Siobhan M. Kelly, Attorney (Fred L. Cornnell, Supervisory Attorney; Leonard R. Page, Acting General Counsel; John H. Ferguson, Associate General Counsel; and Aileen A. Armstrong, Deputy Associate General Counsel, with him on the brief), National Labor Relations Board, Washington, D.C., for Petitioner.

Patrick R. Scully of Sherman & Howard L.L.C., Denver, Colorado (Emily F. Keimig of Sherman & Howard L.L.C., Denver, Colorado, and Raymond M. Deeny, Colorado Springs, Colorado, with him on the brief), for Respondent.

_____

Before **TACHA**, Chief Judge, **McKAY**, and **ANDERSON**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

The National Labor Relations Board petitions for enforcement of its Decision and Order issued to Respondent King Soopers, Inc., on September 13, 2000, finding that 1) King Soopers violated Section 8(a)(1) of the Act by threatening a Union shop steward with discharge for processing an employee's grievance, 2) King Soopers violated Section 8(a)(1) of the Act by discriminatorily enforcing its policy regarding the use of a bulletin board, and 3) King Soopers violated Section 8(a)(5) and (1) of the Act by refusing to furnish the Union with information relevant to the processing of grievances. We exercise jurisdiction pursuant to 29 U.S.C. § 160(e).

King Soopers is a grocery retailer with over eighty stores in Colorado. In many of the stores, the grocery clerks are represented by United Food and Commercial Workers, Local 7. The Union also represents meat department employees in separate bargaining units. The three incidents at issue took place at different King Soopers' locations.

The first incident involved Willard Foster, an all-purpose clerk and the Union's shop steward at store #60 in Greeley, Colorado. On November 11, 1997, while on his fifteen minute break, Mr. Foster asked Store Manager Donna Riggin for an appointment to discuss union business. Ms. Riggin agreed to talk at that time. Mr. Foster explained the request and Ms. Riggin denied it. Mr. Foster then handed Ms. Riggin a previously filled out form documenting that they had

unsuccessfully completed step one of the grievance procedure. Ms. Riggin appeared visibly upset and told Mr. Foster to meet her in her office. In her office, Ms. Riggin told Mr. Foster that he was "really stupid" and that she had "never had such an insolent employee." She further stated, "I won't have anybody like you working for me in this store or in King Soopers." Ms. Riggin also told Mr. Foster, "Your future with this company is limited." She then blocked the door when Mr. Foster attempted to leave. She said that he could not leave until she was finished with him. Mr. Foster explained that he wanted to take his break. Ms. Riggin told him that he did not deserve a break. Mr. Foster then stated his intent to file a labor charge. Ms. Riggin said, "You know a lot about that, don't you?"

The second incident involved Pam Peek, an employee and Union shop steward at store #4 in Englewood, Colorado. During her employment, Ms. Peek frequently observed postings on the Union's bulletin board that did not have an official union logo and did not relate to official union business. On November 21, 1998, Ms. Peek posted several different notices on the Union's bulletin board urging union members to oppose the "right to work" legislation pending in the Colorado legislature. Store Manager Lynda Prickett removed the postings. Ms. Peek replaced the postings, and Ms. Prickett continued to remove them. Ms. Peek questioned Ms. Prickett about the postings and was told that she could not "do

any of this right to work stuff at the store" and that she "could not put any of the stuff up on the bulletin board." Ms. Prickett further stated that any postings on the Union's bulletin board had to be initially approved by King Soopers' director of labor relations. This was the first time Ms. Peek had ever been asked to clear material prior to posting it on the Union's bulletin board.

The third incident involved Keith Johnson, a meat cutter at store #32 in Greeley, Colorado, where the Union represents only meat department employees. On February 18, 1997, Mr. Johnson received a write-up for attendance problems. One week later Mr. Johnson was suspended for attendance violations. On June 9, Mr. Johnson received a final warning for attendance infractions. King Soopers terminated Mr. Johnson in September 1997.

The Union initiated grievance proceedings on Mr. Johnson's behalf shortly after Mr. Johnson's February 1997 suspension. The Union repeatedly requested time and attendance records of non-unit employees who had allegedly committed similar attendance infractions without being subject to discipline. The Union argued that the information was relevant to disparate treatment because all employees were subject to the same attendance rules. Originally, King Soopers did not respond, but they finally denied the Union's repeated requests.

We will affirm the Board's factual findings if they are supported by substantial evidence on the record as a whole. 29 U.S.C. § 160 (e); <u>Universal</u>

Camera Corp. v. NLRB, 340 U.S. 474, 488-91 (1951); McLane/Western, Inc. v. NLRB, 723 F.2d 1454, 1457 (10th Cir. 1983). Although we ordinarily review questions of law de novo, the Board's construction of the National Labor Relations Act is entitled to considerable deference. Intermountain Rural Elec. Ass'n v. NLRB, 984 F.2d 1562, 1566 (10th Cir. 1993).

After a thorough review of the record and the briefs submitted by the parties, we hold that substantial evidence on the record as a whole supports the Board's factual findings. King Soopers' primary contention seems to be that the court should overturn the Board's credibility findings. We do not usually overturn the Board's credibility findings "[a]bsent extraordinary circumstances." Presbyterian/St. Luke's Med. Ctr. v. NLRB, 723 F.2d 1468, 1477 (10th Cir. 1983). King Soopers failed to show any extraordinary circumstances that would warrant overturning the Board's credibility findings.

The equitable argument advanced by King Soopers is also unavailing. King Soopers claims that the Board seeks enforcement in an "attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." NLRB v. Maywood Plant of Grede Plastics, 628 F.2d 1, 6 (D.C. Cir. 1980) (quoting Fibreboard Corp. v. NLRB, 379 U.S. 203, 216 (1964)). King Soopers claims that the violations are isolated, minor mistakes made by separate store-level managers in a large collective bargaining relationship. It further argues that

there is no evidence that the violations are likely to be repeated and that the specific factual circumstances of these violations makes contempt unlikely.

King Soopers claims that the Board views it as a habitual offender of the Act and that court enforcement of the Board's order is sought as a broad sanction against it. As evidence of this improper motive, King Soopers highlights the Board's references to many unrelated allegations that have been levied against King Soopers. King Soopers also notes that, of the fifty original allegations against it in this suit, only three were sustained. King Soopers' ultimate fear is that the Board will improperly circumvent the administrative process and use contempt proceedings instead of its own investigative and prosecutorial functions should further allegations arise. King Soopers contends that the Board's immediate access to the court's contempt power is inequitable because it is currently in compliance with the Board's order and because the specific violations are not likely to be repeated.

We are unconvinced by King Soopers' argument that its compliance with the Board's order renders enforcement unnecessary and inequitable. The Supreme Court has stated that "[an] employer's compliance with an order of the Board does not render the cause moot, depriving the Board of its opportunity to secure enforcement from an appropriate court." NLRB v. Mexia Textile Mills, Inc., 339 U.S. 563, 567 (1950). King Soopers concedes that mootness is not a reason for a

court to deny enforcement of the Board's order and repeatedly asserts that its equitable argument is separate and distinct from a mootness argument.

Despite King Soopers' assertions to the contrary, we are unable to distinguish this argument from a mootness argument. We are equally unmoved by King Soopers' assertions that of fifty allegations only three were sustained in this case. The fact that "[t]hese proceedings have resulted in the dismissal, withdrawal, settlement, or deferral of the vast majority of allegations brought against King Soopers" is not evidence that the other forty-seven allegations were without merit. Resp. Reply Br. at 2. While equitable considerations impact our grant or denial of enforcement in a case such as this, simple allegations of compliance and mootness will not justify denial. We therefore grant the Board's request for enforcement of its September 13, 2000, Decision and Order.[1]

For the foregoing reasons, the decision of the National Labor Relations Board is AFFIRMED.

---

[1]Respondent's Motion to Correct Omission from the Record is denied. Respondent's Motion to Supplement Record is denied. Respondent's Request for Sanctions is denied.