[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15976

_____

Agency Nos. 15-CA-16552,
15-CA-16578

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 25, 2009
THOMAS K. KAHN
CLERK

NATIONAL LABOR RELATIONS BOARD,

                                                                    Petitioner,

versus

AUSTAL USA, LLC,

                                                                    Respondent.


_____

Petition for Review of a Decision of the
National Labor Relations Board

_____

(August 25, 2009)

Before CARNES and PRYOR, Circuit Judges and STAGG,[*] District Judge.

PRYOR, Circuit Judge:

_____

[*] Honorable Tom Stagg, United States District Judge for the Western District of Louisiana,
sitting by designation.

This application presents issues about the sufficiency of the evidence underlying part of an order of the National Labor Relations Board and alleged inequities that would result from enforcement of that order. In April 2002, the Sheet Metal Workers International Association Union, Local 441, began an organizational campaign at a Mobile, Alabama, facility of Austal USA, a shipbuilding subsidiary of an Australian company. 349 NLRB No. 51 at 5. After the parties entered a Stipulated Election Agreement, the election occurred on May 24. Id.

In October 2002, the union complained to the Board that Austal violated sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), when it questioned, threatened, promised benefits to, impermissibly restricted the activities of, suspended, and terminated several employees before and after the election. See 349 NLRB No. 51 at 6–30. After a trial, an administrative law judge found in favor of the union. Austal filed exceptions, a divided three-member panel of the Board affirmed, and the Board applied for enforcement.

Because Austal contests only the findings of the Board about the suspension of a welder, Darrell Spencer, and the termination of eight other employees in advance of the union election, we review only those findings. We summarily enforce the uncontested findings that Austal violated sections 8(a)(1) and (3) of the Labor Act when it threatened employees with "plant closure, job loss, stricter

2

discipline, and unspecified reprisals" if they supported the union or read or discussed union materials during working hours.  See id. at 2, 18–19, 24–26.  We review the arguments of Austal with deference to the Board.  We must "ensure that the decision of the Board is supported by substantial evidence on the record as a whole."  NLRB v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998).

The three arguments of Austal about the decision of the Board fail.  Austal argues that insufficient evidence supports the decision of the Board about Spencer, but that decision was based on the credibility findings of the administrative law judge, 349 NLRB No. 51 at 2 n. 8, which Austal does not contest.  Austal argued before the administrative law judge that Spencer was terminated because he knowingly made a bad weld, but the administrative law judge found that because the "suspension document state[d] that Spencer was suspended for 'lack of quality work[,]'" Austal offered a "shifting rationale[,]" which "is a hallmark of unjustified disciplinary actions."  Id. at 27–28.  The administrative law judge credited Spencer's testimony that he told his supervisor he could not successfully perform the weld with the wire he was instructed to use, asked to use a smaller wire, ordinarily was permitted to use whatever size wire he thought was appropriate, and when his request was denied, "did the best that [he] could do" with the specified wire.  Id.  On the basis of this credibility determination, the administrative law judge found that Austal "put Spencer in a situation where he

3

could not properly perform the weld" and "suspend[ed] Spencer because of his union activities[,]" id. at 28, and the Board concluded that "[t]here is no credible evidence . . . supporting the . . . purported reason for the suspension[,]" id. at 2 n. 8.

Austal also argues that insufficient evidence supports the decision of the Board that the eight pro-union employees were terminated to preclude their participation in the election, but substantial evidence supports that decision, including a statement by a company executive in April 2002 that "we don't do layoff," id. at 25; a memorandum by another executive that established that the initial decision was to lay off employees, but "[t]hat decision was later altered and the employees were discharged[,]" id.; the futility of a verbal invitation Austal issued for the terminated employees to reapply, as proved by an internal document stating that Austal would not rehire the employees, id. at 23–24; and the unsuccessful application for reemployment of one of the terminated employees, id. at 23. Austal also contests the decision of the Board about the terminations on the ground that the decision was based on a legal theory not mentioned in the complaint or litigated at the trial, but the complaint included an adequate allegation, and Austal knew the argument of the General Counsel after he mentioned it in his opening statement and presented evidence about it at trial.

Because substantial evidence supports the decision of the Board, we enforce its order regardless of any compliance by Austal. NLRB v. Mexia Textile Mills,

339 U.S. 563, 567–68, 70 S. Ct. 826, 828–29 (1950); <u>NLRB v. Patterson</u>

<u>Menhaden Corp.</u>, 389 F.2d 701, 703 (5th Cir. 1968).

We **ENFORCE IN FULL** the order of the Board.