NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BUILDING AND CONSTRUCTION
TRADES COUNCIL OF DELA-
WARE, Respondent.

No. 77–2623.

United States Court of Appeals,
Third Circuit.

Argued May 2, 1978.
Decided June 20, 1978.

---

Allison W. Brown, Jr., Deputy Asst. Gen. Counsel, Joseph A. Oertel, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Dep. Associate Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Richard Sigmond, Bernard N. Katz, Bruce E. Endy, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for respondent.

Before SEITZ, Chief Judge, and VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The National Labor Relations Board petitions for enforcement of its Order issued against Building and Construction Trades

Council of Delaware (Council) and the Council cross-petitions for review.

The Board found that the Council violated Section 8(b)(7)(C) of the National Labor Relations Act [1] by picketing the Pettinaro Construction Company, Inc. ("the Company") at its United States Postal Service project with an object of forcing or requiring the Company to recognize and bargain with local unions affiliated with the Council, although neither the Council nor any of its locals was certified as the bargaining representative of the Company's employees and no election petition was filed within 30 days after commencement of the picketing.

After concluding that the Council violated the Act, the Board imposed the following remedy:

"Cease and desist from picketing or causing to be picketed, or threatening to picket or cause to be picketed, Pettinaro Construction Co., Inc. *or any other employer*, where an object thereof is forcing or requiring said Employer to recognize or bargain with Respondent Council or its affiliated locals, as the collective-bargaining representative of its employees, or for the purpose of forcing or requiring the employees of said Employer to accept or select Respondent Council or its affiliated locals as their collective-bargaining representative, under circumstances which would violate Section 8(b)(7)(C) of the Act, as amended." (Emphasis added.)

The Council contends that we should deny enforcement on the ground that there is insufficient evidence in the record to support the findings of the Board. In addition, the Council asserts that the cease and desist Order is impermissibly broad to the extent that it includes "any other employer."

I.

We first determine whether there was substantial evidence to support the Board's findings of an unfair labor practice.

About January 16, 1976, the U.S. Postal Service awarded the Company a $7,625,000 general contract to construct a mail and vehicular maintenance facility in New Castle County, Delaware. In early January, shortly before it was awarded the contract, Company President Pettinaro and Vice-President Alfred Bertomeu met with Council President Theodore Ryan and asked whether the Company would "once again be picketed and bothered by the . . . Council." Ryan said that while he "could not speak for his membership," because the Company was "the biggest non-union contractors [sic] in the state . . . [he] would like [the Company] . . . to be the first to sign an agreement to use only union subcontractors." Nothing was done by the Company to accomplish such an agreement. On February 9, the first Company employee hired for the Postal Service project, a carpenter, commenced work at a wage of $10.98 per hour, including fringe benefits, the then prevailing area wage. He was the only employee on the project until March 22, 1976, when an apprentice carpenter commenced work. Commencing on February 23, 1976, and continuing to April 1, 1976, there was an interchange of letters between the Council and the Company. In its letters, the Council took the position that the Company's pay and benefit standards on the project were substantially beneath those which prevailed in the area. In its letters the Company took the position that it was complying with area

1. In relevant portion Section 8(b)(7)(C) provides that:

(b) It shall be an unfair labor practice for a labor organization or its agent—

    *    *    *    *    *    *

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

    *    *    *    *    *    *

(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: . . . .

standards for all of its employees on the project.

On April 1, 1976, the Council commenced picketing at the construction site. The picket signs protested the Company's pay practices as being beneath those which were considered the area standards and protested the destruction of these area standards. Though the picketing continued without interruption for over 30 days, neither the Council nor any of its affiliated locals petitioned the Board for an election.

■ The Board found that Ryan's reference to "union subcontractors" meant those subcontractors who had a bargaining relationship with locals affiliated with the Council. Ryan's statement regarding the subcontractors, the Board concluded, was "a clear signal . . . that picketing could be avoided by signing" a subcontracting agreement. It is recognized that picketing of a non-union general contractor that is directed at obtaining a subcontracting agreement "has the proscribed 'recognitional' purpose as at least one of its objectives." *Hirsch v. Building and Construction Trades Council of Philadelphia and Vicinity*, 530 F.2d 298, 303 (3rd Cir. 1976).

■ The Board concluded that, under the circumstances, Ryan's statement respecting the desirability of a subcontracting agreement was a manifestation of an organizational and recognitional purpose in the subsequent picketing. On this record we believe the Board was warranted in finding that there was reasonable cause to believe that the Council's picketing was conducted with at least an objective prohibited by Section 8(b)(7)(C) in mind.

■ The Council contends that its only purpose in picketing was to protest the Company's alleged substandard wages and fringe benefits. However, area standards picketing is permissible only where it can be shown that the employer's mode of operation is substandard in comparison with the negotiated area standards. *Automotive Employees, Laundry Drivers, Local 88 (West Coast Cycle Supply Co.)*, 208 NLRB No. 97 (1974). The record shows that the Council had no information on which it could conclude that the Company's wages and benefits did not meet area standards. The one carpenter employed on the project during the period prior to picketing was paid the amount provided in the union scale —$10.98 an hour, including fringe benefits.

Further undermining the Council's defense that its picketing had solely an area standard objective is the fact that it did not make substantial efforts to obtain information as to whether the Company's wages or benefits met area standards. In his January meeting with Company officials, Ryan expressed a desire for a subcontracting agreement but did not inquire about wages or benefits. Nor did he ask the Company which crafts it planned to hire or what would be paid. Ryan was aware that the Company's wage scale was published in the Federal Register, but he admittedly did not look for it. No agents of the Council investigated sufficiently to discover the wage scale posted in February and March on the Company trailer at the project site. Ryan himself conceded in his testimony that when the picketing began the information in his possession was "not sufficient" to conclude that the Company's wages or benefits were substandard. The exchange of letters between the Council and the Company unearthed no evidence that the Company was paying substandard wages. In fact, the Company repeatedly asserted in its correspondence that it was fully in compliance with area standards.

Ryan's invitation for a subcontracting agreement, the absence of evidence that the Company was not meeting area standards, as well as the Council's failure to sufficiently investigate relevant wage rates provide adequate support for the Board's conclusion that the picketing had a recognitional purpose. Inasmuch as neither the Council nor any of its affiliated locals was certified as bargaining agent for the Company's employees, no election petitioned was filed, and picketing continued for over 30 days, the Board's determination that the Council violated Section 8(b)(7)(C) of the Act was supported by substantial evidence.

## II.

 We next consider the Council's contention that the Board's cease and desist order, by including "any other employer," was too broad in its sweep. Since such language reflects the Board's judgment that the unfair labor practice complained of here is likely to be repeated against other employers, it is appropriate only where supported by the record. *Communications Workers of America v. N. L. R. B.,* 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896 (1960). In *Communications Workers,* the Supreme Court observed that the union was "not found to have engaged in violations against the employees of any employer other than" the telephone company immediately involved in that case. The Court observed further that there was no significant evidence of a "generalized scheme against all telephone employees." Under those circumstances the Court concluded "we find neither justification nor necessity for extending the coverage of the order generally by the inclusion therein of the phrase 'any other employer.'" Accordingly, the Court struck from the Board's Order the language restraining similar unfair labor practices against "any other employer."

 The record in this case is devoid of any evidence of any prior violation by the Council of 8(b)(7)(C) with respect to any employer other than the Company. The Board's justification for extending the prohibition to "any other employer" appears to be its conclusion that the case represents the second time in two years that the Council engaged in "similar unfair practices, thereby exhibiting a propensity to continue or repeat its illegal acts." (Footnote omitted.) Under such circumstances, the Board argues that its Order requiring the Council to cease and desist from recognitional picketing against "any other employer" is justified and not overly broad. However, in its 1974 decision, the Board found that the picketing in question was unlawful *not* because it was for an organizational purpose but because it had the effect of inducing individuals employed by others to refuse to deliver or transport goods or to perform

services. 215 NLRB No. 54. This earlier violation against the same employer coupled with that in the instant case does not constitute evidence of a general scheme, pattern or course of conduct which would justify extension of the cease and desist Order to "any other employer." *N. L. R. B. v. Lexington Elec. Prod. Co.,* 283 F.2d 54 (3rd Cir. 1960); cf. *N. L. R. B. v. Highway Truck Drivers,* 300 F.2d 317 (3rd Cir. 1962).

We conclude that there is insufficient support in the record for extending the injunction to action against "any other employer." In consequence, that portion of the Board's Order will not be enforced.

The Order of the Board will be enforced except for the "any other employer" provision.