LONE STAR STEEL
COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

United Mine Workers of
America, Intervenor.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

UNITED MINE WORKERS OF
AMERICA, Respondent,

and

Lone Star Steel Company, Intervenor.

Nos. 77–1667, 82–2568.

United States Court of Appeals,
Tenth Circuit.

July 10, 1985.

Lynn P. Mattson of Nichols & Wolfe, Inc., Tulsa, Okl., for Lone Star Steel Co.

David Fleischer, Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., were also on the briefs), for the N.L.R.B.

A. Randall Vehar, Washington, D.C. (Michael H. Holland, Willard P. Owens, Washington, D.C., and Maynard I. Ungerman of Ungerman, Conner, Little, Ungerman & Goodman, Tulsa, Okl., were also on the briefs), for United Mine Workers of America.

Before HOLLOWAY, Chief Judge, BARRETT, Circuit Judge, and MILLER,* Senior Circuit Judge.

* The Honorable Jack R. Miller, United States Circuit Judge for the Federal Circuit, sitting by designation. Judge Miller assumed senior status on June 6, 1985.

HOLLOWAY, Chief Judge.

I

These proceedings arise from the Board's supplemental order on remand following our decision in *Lone Star Steel Co. v. NLRB*, 639 F.2d 545 (10th Cir.1980), *cert. denied*, 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335 (1981). A review of the facts of that case is helpful in understanding the current controversy.

Lone Star is a Texas manufacturer of steel products. In 1972, Lone Star acquired the Starlight coal mine near McCurtain, Oklahoma. The mine initially was operated by the River Corporation under an agreement with Lone Star. The miners were covered by the terms of the 1971 National Bituminous Coal Wage Agreement ("national agreement"), to which the River Corporation was a signatory. Lone Star began to mine the Starlight coal in 1973 with its own employees. Although Lone Star was not a member of the Bituminous Coal Operators' Association ("BCOA"), Lone Star agreed to abide by the terms of the national agreement as they applied to the Starlight mine as an independent coal operator, with some exceptions not here relevant. 639 F.2d at 547.

Two months before the national agreement was to expire, the Union requested that Lone Star and other independent signatories execute a memorandum of agreement expressing their intent to be bound by the terms of any successor national agreement negotiated by the Union and the BCOA. Lone Star refused, and some of their employees at the Starlight mine joined in a nationwide strike when a contract was not reached by the expiration of the national agreement on November 12, 1974. *Id.* at 547–48.

The Union and the BCOA executed a new national agreement on December 5, 1974. The agreement carried forward the following "application-of-contract" clause from the preceding national agreement:

As part of the consideration for this agreement, the Employers agree that this Agreement covers the operation of all the coal lands, coal producing and coal preparation facilities owned or held under lease by them, or any of them, or by any subsidiary or affiliate at the date of this Agreement, or acquired during its term which may hereafter (during the term of this Agreement) be put into production or use.

*Id.* at 548.

Lone Star declined to accept the terms of the new national agreement and its Starlight mine employees remained on strike. The employees returned to work on January 6, 1975 but went back out on strike on March 8 when Lone Star still refused to accept the application-of-contract clause. Lone Star brought unfair labor practice charges against the Union, alleging that the Union had violated section 8(b)(3) of the National Labor Relations Act, 29 U.S.C. § 158(b)(3) by striking to compel acceptance of the clause. The Board disagreed and held that the clause was a mandatory subject of bargaining and that the Union's strike over the clause was lawful. *Id.* at 549.

On Lone Star's petition for review of the Board's order, this court reversed the Board's decision on this issue and concluded that "the Board erred in holding that the application of contract clause was a mandatory subject of bargaining." *Id.* at 559. We held that "by striking to achieve agreement on a nonmandatory subject the Union refused to bargain within the meaning of § 8(b)(3) of the Act." *Id.* We remanded the case to the Board "for further proceedings, all in accordance with this opinion." *Id.*

On remand, the Board stated as follows:

The Board having duly considered the matter, and having accepted the [Tenth Circuit's] remand as the law of this case, hereby finds that the application-of-contract clause is a nonmandatory subject of bargaining and that, by striking for this clause, [the Union] has engaged in unfair labor practices in violation of Section 8(b)(3) of the Act.

IV R. 1179–80.

The Board ordered the Union to cease and desist from demanding that Lone Star

or any other employer agree to the application-of-contract clause, and from striking or picketing Lone Star or any other employer over the clause.[1] The Board also required the Union to notify Lone Star that it was withdrawing its demand for the application-of-contract clause, to post appropriate notices, and to mail copies of the notice to Lone Star for posting, if Lone Star so desired. *Id.* at 1180–81.

The Union and the General Counsel filed motions to clarify the Board's supplemental order. The Union argued in part that the order was "vague and overbroad because it would enjoin the [Union] from proposing the [application-of-contract] clause not only to Lone Star, but also to 'any other employer.'" *Id.* at 1193. The Union urged that the order be restricted to Lone Star and not cover other employers. The General Counsel also argued that the order was too broad and urged the Board to "modify its Supplemental Order so as to proscribe conduct *vis-a-vis* Lone Star Steel Company, and no other employer." *Id.* at 1208. The Board granted the motions for clarification and deleted the words "or any other employer" from its supplemental order. *Id.* at 1219–20.

In No. 77–1667, Lone Star filed in this court a supplemental petition for review and application for enlargement of mandate. Lone Star essentially argues that (1) the Board's supplemental order as clarified did not comply with this court's mandate; and (2) the supplemental order as clarified

reflects the Board's intention not to follow this court's decision in future cases, and that this "nonacquiescence" policy is an improper stance for the Board to take.

In No. 82–2568, the Board filed a motion for summary enforcement of its supplemental order as clarified. We ordered that these cases be consolidated, and our decision on both follows. We deny the relief sought by Lone Star in No. 77–1667 and grant enforcement of the Board's order in No. 82–2568.

## II

Before turning to the parties' arguments on the merits in Nos. 77–1667 and 82–158, we first must consider our jurisdiction to entertain these proceedings.

### A. Jurisdiction

#### 1. No. 77–1667

The Board argues that this court lacks jurisdiction in No. 77–1667 to consider Lone Star's arguments concerning the Board's "future intentions" for two reasons.[2] First, the Board asserts that its future intentions are not reviewable final orders under § 10(f) of the Act, 29 U.S.C. § 160(f). Brief for the National Labor Relations Board 19–24. Second, the Board contends that no case or controversy exists with respect to these future intentions. *Id.* at 25–29. The Union also raises jurisdictional concerns about Lone Star's action. Brief of United Mine Workers of America 8–18.[3]

---

1. The Board ordered the Union to cease and desist from:

   (a) Demanding that Lone Star Steel Company, *or any other employer*, accept as an element of any collective-bargaining agreement the clause referred to as the "Application of This Contract to the Employer's Coal Lands" set forth in the National Bituminous Coal Wage Agreement of 1974.

   (b) Striking and/or picketing Lone Star Steel Company, *or any other employer*, for the purpose of forcing Lone Star Steel Company, *or any other employer*, to agree to the application of contract to coal lands clause.

   IV R. 1180 (emphasis added).

2. The Board also argues that the court lacks jurisdiction because the Board and the General

Counsel have not refused to comply with the court's decision. Brief for the National Labor Relations Board 10–19. We consider this argument in our discussion of the merits of the action.

3. The Union contends that the court is without jurisdiction in No. 77–1667 because Lone Star did not petition the Board for rehearing ·or reconsideration after the Board issued its supplemental order. Brief of United Mine Workers of America 18. We note, however, that § 10(e) of the Act provides only that "[no] objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). We

We believe that none of these contentions as to Lone Star's supplemental petition for review and application for enlargement of mandate in No. 77–1667 prevent us from considering Lone Star's arguments concerning the Board's supplemental order as defenses to the Board's motion for summary enforcement in No. 82–2568.

## 2. No. 82–2568

■ The Union argues that the Board's enforcement action is moot because the Union is complying with the Board's supplemental order. Brief of United Mine Workers of America 22–24. The Supreme Court, however, has repeatedly held that "the employer's compliance with an order of the Board does not render the cause moot, depriving the Board of its opportunity to secure compliance from an appropriate court." *NLRB v. Mexia Textile Mills, Inc.,* 339 U.S. 563, 567, 70 S.Ct. 826, 828, 94 L.Ed. 1067 (1950); *see also NLRB v. Raytheon Co.,* 398 U.S. 25, 27, 90 S.Ct. 1547, 1548, 26 L.Ed.2d 21 (1970).[4]

The Union also contends that the enforcement action is moot because the Union no longer represents employees of Lone Star, Lone Star no longer operates mines at which the Union is the collective bargaining representative, and there have been no collective bargaining negotiations between the parties for several years. Brief of United Mine Workers of America 24–25. Lone Star, however, states that "it will remain in the mining business and be dealing with this union again directly when it operates its own mines again." Brief of Lone Star Steel Company 11. Without accepting these factual assertions by the company and the Union which are not developed in

this record, we are persuaded that under established precedents we must hold that the enforcement action is not moot here. *See NLRB v. Kostilnik,* 405 F.2d 733, 735 (3d Cir.1969) (per curiam); *see also NLRB v. Great Western Coca-Cola Bottling Co.,* 740 F.2d 398, 406 (5th Cir.1984); *NLRB v. Bell Co.,* 561 F.2d 1264, 1266 n. 2 (7th Cir.1977); *NLRB v. Family Heritage Home-Beaver Dam, Inc.,* 491 F.2d 347, 351 (7th Cir.1974); *NLRB v. Colonial Knitting Corp.,* 464 F.2d 949, 952 n. 10 (3d Cir.1972).

Lone Star argues that the enforcement action is premature because we should first consider its arguments before ruling on the Board's enforcement action. Brief of Intervenor Lone Star Steel Company 5–6. We will consider Lone Star's arguments before considering enforcement of the Board's supplemental order.

## B. The Merits

Lone Star argues that (1) the Board's supplemental order as clarified by deleting the words "or any other employer" did not comply with this court's mandate; and (2) the supplemental order as clarified reflects the Board's intention not to follow this court's decision in future cases, and that this "nonacquiesence" policy is an improper position for the Board to take. We address these arguments in turn.

■ First, we must hold that the Board's supplemental order satisfactorily implements our mandate. On remand, the Board accepted our decision as the "law of this case" and found, as our opinion did, that the application-of-contract clause was a nonmandatory subject of bargaining and that the Union violated § 8(b)(3) by striking to achieve agreement on the clause. IV R.

---

therefore must reject the Union's argument because Lone Star satisfied the statutory requirement by filing with the Board an eight page memorandum in opposition to the Union's motion for clarification of the Board's supplemental order which raised the issues now before this court. IV R. 1197–1204.

**4.** The Union also argues that the enforcement action is premature because the Board has not followed its own internal preenforcement practices which the Union alleges require the Board

to seek voluntary compliance before initiating an enforcement action. Brief of United Mine Workers of America 22–24. The Union, however, does not direct us to any authority to support its position that the Board's alleged internal policies encouraging voluntary compliance before seeking enforcement prevent the Board from seeking enforcement here. In these circumstances, we must reject the Union's argument in light of the Supreme Court's pronouncements that compliance does not render an enforcement action moot.

1179. The supplemental order directs that the Union cease and desist from the conduct which this court found to be unlawful, and thus complies with the statutory mandate requiring the Board, after finding that a person has engaged in an unfair labor practice, to issue "an order requiring *such person* to cease and desist from such unfair labor practice." Act § 10(c), 29 U.S.C. § 160(c) (emphasis added).

The Supreme Court's decision in *Communications Workers of America, AFL–CIO v. NLRB*, 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896 (1960) (per curiam), supports our conclusion. In that case, the Board found that unions violated § 8(b)(1)(A) of the Act during the course of a strike against the Ohio Consolidated Telephone Company. The Board entered an order requiring the unions to cease and desist "from *in any manner* restraining or coercing employees of Ohio Consolidated Telephone Company *or any other employer* in the exercise of the rights guaranteed in Section 7 of the Act." *Id.* at 480, 80 S.Ct. at 839 (emphasis in original). The only issue in the case was the validity of the order as it extended to "any other employer" as well as to the telephone company. The Supreme Court held as follows:

> Petitioners were not found to have engaged in violations against the employees of any employer other than Ohio Consolidated and we find neither justification nor necessity for extending the coverage of the order generally by the inclusion therein of the phrase "any other employer." "It would seem ... clear that the authority conferred on the Board to restrain the practice which it has found ... to have [been] committed is not an authority to restrain generally all other unlawful practices which it has neither found to have been pursued nor persuasively to be related to the proven unlawful conduct."

5. Reply Brief of Lone Star Steel Company 3–5.

6. *Amax Coal Co. v. NLRB,* 614 F.2d 872, 883–84 (3d Cir.1980), *rev'd on other grounds,* 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981).

*Id.* at 480–81, 80 S.Ct. at 839–840 (quoting *NLRB v. Express Publishing Co.,* 312 U.S. 426, 433, 61 S.Ct. 693, 698, 85 L.Ed. 930 (1941) ); *see also NLRB v. Building and Construction Trades Council,* 578 F.2d 55, 59 (3d Cir.1978); *San Francisco Local Joint Executive Board of Culinary Workers v. NLRB,* 501 F.2d 794, 801–02 (D.C.Cir. 1974). The Court concluded that the Union had not engaged in a "generalized scheme against all telephone employers." *Id.* 362 U.S. at 481, 80 S.Ct. at 840.

Similarly, the Board here has not found that the Union engaged in similar violations against other employers beside Loan Star, and thus has not found that the Union engaged in a "generalized scheme against all ... employers." Although it is true, as Loan Star points out, that the Union here had engaged in a nationwide strike,[5] there is no evidence that the Union violated § 8(b)(3) by striking other employers beside Lone Star and Amax Coal Co.[6] over this same clause. In these circumstances, we must conclude that the supplemental order, without inclusion of the words "or any other employer," is a proper order under *Communications Workers.*

Second, we must reject Lone Star's argument that the Board has indicated that it will refuse to follow this court's decision in future cases. The Board's supplemental order expressly accepts our decision as the law of this case and is silent with respect to its intentions in future cases. We reject Lone Star's invitation to read into this silence an implied intention that it will treat future application-of-contract clauses as a mandatory subject of bargaining.[7] As a result, we need not consider Lone Star's challenge to the Board's nonacquiescence doctrine in which the Board reserves to itself the authority to decline to follow court of appeals decisions in future cases. *See NLRB v. A. Duie Pyle, Inc.,* 730 F.2d

7. We need not consider Lone Star's repeated allegations concerning the Board's actions in another case because we entered an order on August 5, 1983 denying Lone Star's motion to make the record in that case a part of the record in this case.

119, 128 (3d Cir.1984); *Yellow Taxi Company of Minneapolis v. NLRB*, 721 F.2d 366, 381–84 (D.C.Cir.1983); *id.* at 384–85 (Wright, J., concurring); *id.* at 385 (Bork, J., concurring); *NLRB v. HMO International/California Medical Group Health Plan, Inc.*, 678 F.2d 806, 812 (9th Cir.1982); *Ithaca College v. NLRB*, 623 F.2d 224, 228 (2d Cir.), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); *Mary Thomson Hospital, Inc. v. NLRB*, 621 F.2d 858, 862–64 (7th Cir.1980); *Alleghany General Hospital v. NLRB*, 608 F.2d 965, 968–70 (3d Cir.1979); *NLRB v. Eastern Smelting & Refining Corp.*, 598 F.2d 666, 671–72 (1st Cir.1979). This is not a situation where the Board in a subsequent case has refused to follow a prior decision of a court of appeals; the Board in this case has expressly followed our decision on remand. Accordingly, this is not the proper case for us to consider the Board's nonacquiescence doctrine.

In sum, the various objections to enforcement of the Board's supplemental order on remand are unpersuasive and we conclude that the Board is entitled to enforcement of that order as clarified.

### III

Accordingly, we deny Lone Star's application for enlargement of mandate in No. 77–1667, and we grant the Board's motion for summary enforcement of its supplemental order as clarified in No. 82–2568.

IT IS SO ORDERED.