**NATIONAL LABOR RELATIONS BOARD, Petitioner**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Local 98, AFL–CIO, Respondent.**

No. 06–4124.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) Sept. 19, 2007.

Filed: Oct. 12, 2007.

Jill A. Griffin, Amy Ginn, National Labor Relations Board, Washington, DC, for Petitioner.

Richard B. Sigmond, Stephen J. Holroyd, Jennings Sigmond, Philadelphia, PA, for Respondent.

Before: SLOVITER, SMITH, and GARTH, Circuit Judges.

## OPINION

SMITH, Circuit Judge.

The National Labor Relations Board ("NLRB") petitions this Court for enforcement of its July 30, 2004 order, 2004 WL 1748549, issued against the International Brotherhood of Electrical Workers, Local 98 ("the Union").[1] The order affirmed the determination by an Administrative Law Judge ("ALJ") that the Union had committed multiple unfair labor practices under the National Labor Relations Act, 29 U.S.C. § 158 (§§ 8(b)(1)(A), 8(b)(4)(i)(B), and 8(b)(4)(ii)(B) of the Act), by improperly targeting four employers for using non-union electrical workers at four job sites.[2] The Union contends that the NLRB's administrative decision is not supported by substantial evidence and that the nearly two-year delay between the issuance of the NLRB decision and the petition for enforcement gives rise to a defense of laches. For the reasons set forth below, we will enforce the NLRB's order.

In 1998, the Union targeted four employers, Adams–Bickel, the Cheltenham School District, the Wohlsen Construction Company ("Wohlsen"), and the United Parcel Service ("UPS"), in an effort to discourage them from using non-union electrical services at four job sites. Additionally, the Union, working in concert with Local 380, began a campaign to organize and represent the employees of State Electric. The Union's principal organizer was Timothy Browne and Local 380's counterpart was Kenneth MacDougall.

Browne and MacDougall visited the four job sites throughout 1998 and 1999 and discovered that all four companies employed non-union employees for electrical work. Browne engaged in various tactics to disrupt the work at these job sites in an effort to galvanize support for union electrical workers. According to the NLRB's order, the Union violated § 8(b)(1)(A) when Browne prevented a State Electric foreman from performing his work, threatened him, and photographed him and his co-workers without their permission. The Union violated § 8(b)(4)(ii)(B) when Brown threatened Adams–Bickel and the Cheltenham School District for hiring State Electric. The Union violated § 8(b)(1)(A) by blocking ingress and egress at the Webb Pavilion facility at a Wohlsen construction site and by threatening a worker who was trying to enter. The Union violated § 8(b)(4)(ii)(B) by threatening to engage in secondary picketing at UPS. When the Union engaged in secondary picketing, first at reserved gates with the intent of forcing Wohlsen to stop the employment of

1. The NLRB's jurisdiction stems from the National Labor Relations Act, which empowers the NLRB to "prevent any person from engaging in unfair labor practices affecting commerce." 29 U.S.C. § 160(a). This Court also derives its jurisdiction from the National Labor Relations Act. 29 U.S.C. § 160(e) ("The Board shall have power to petition any court of appeals of the United States.... Upon the filing of such petition, the court shall ... have jurisdiction of the proceeding and of the question determined therein ...").

2. The order directed the Union to cease and desist from employing unfair labor practices as described in the ALJ's order.

a non-union contractor, and then in order to force UPS to cease doing business with a non-union contractor, the NLRB found that the Union had violated § 8(b)(4)(i)(B).

We review decisions of the NLRB for substantial evidence. *See N.L.R.B. v. Pizza Crust Co.*, 862 F.2d 49, 51 (3d Cir.1988). We exercise plenary review over matters of law. *See Dorsey Trailers, Inc. v. N.L.R.B.*, 134 F.3d 125, 129 (3d Cir.1998). However, the NLRB's construction of the statutes it administers is accorded deference. *See N.L.R.B. v. Greensburg Coca-Cola*, 40 F.3d 669, 673 (3d Cir.1994).

■ The Union first summarily asserts that the NLRB's administrative decision is not supported by substantial evidence. We disagree. When the Supreme Court considered the statutory standard of "substantial evidence" in the context of the National Labor Relations Act, it defined the standard as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (internal citations omitted). The Union has not provided any persuasive argument that the NLRB's detailed and thorough decision did not meet the "substantial evidence" standard.

The Union also asserts that the NLRB is barred by the doctrine of laches because it did not seek enforcement of the order for nearly two years. Because the Union fails to satisfy the elements required to assert the defense of laches, we find that the defense is unavailable.

■ The elements of the equitable defense of laches are "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. U.S.*, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). These elements are conjunctive; and because laches is a defense, the burden of establishing both is on the party asserting the defense. *E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir.1984). Even if we assume *arguendo* that the two year delay is a sufficient period to meet the requirement for a "lack of diligence," [3] the Union has failed to adequately plead prejudice.

It is not inequitable to enforce the NLRB's order against the Union because the enforcement will be neither pointless nor obsolete. Courts have held enforcement is unnecessary or futile where, for example, the employer has gone out of business, *see Brockway Motor Trucks v. N.L.R.B.*, 582 F.2d 720, 740 (3d Cir.1978); the employer has sold the business to a successor company who has independently taken action to correct each of the predecessor company's violations, *see N.L.R.B. v. Maywood Plant of Grede Plastics*, 628 F.2d 1, 7 (D.C.Cir.1980); significant time has passed between the violation and enforcement where the facts on which the order is based are questionable or of no use, *see C–B Buick, Inc. v. N.L.R.B.*, 506 F.2d 1086, 1096 (3d Cir.1974); or personnel changes have eliminated any threat of a recurrent violation, *see N.L.R.B. v. Greensboro News*, 843 F.2d 795, 799 (4th Cir.1988). Unlike these cases, the factual circumstances surrounding the original dispute between the complainants and the Union have not changed in any material fashion such that enforcement is obsolete.

Instead, the Union argues only that its compliance with the NLRB's order ren-

---

**3.** Such an assumption is generous in light of the Sixth Circuit's observation that "delays of over two years are not intolerable." *N.L.R.B. v. Michigan Rubber Products*, 738 F.2d 111, 113 (6th Cir.1984).

ders enforcement after a two-year delay prejudicial. Mere compliance with an NLRB order, however, does not "depriv[e] the Board of its opportunity to secure enforcement." *N.L.R.B. v. Mexia Textile Mills,* 339 U.S. 563, 567, 70 S.Ct. 826, 94 L.Ed. 1067 (1950). "A Board order imposes a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree." *Id.* That the Union has not, to this point, resumed the unfair practices is not a defense. *See id.* The Union has not taken any action that could render enforcement of the NLRB order inequitable. *See C–B Buick,* 506 F.2d at 1092.

For these reasons, we will enforce the NLRB's order.